Curtis TURNER and Hugh Rakes, Appellants,

v.

B. W. KELLY and C. E. Holcomb, Appellees.

No. 7749.

United States Court of Appeals Fourth Circuit.

Argued Nov. 13, 1958.

Decided Dec. 19, 1958.

Thomas J. Surface and T. D. Hobart, Jr., Roanoke, Va., for appellants.

Daniel H. Payne, Norfolk, Va. (Clifton A. Woodrum, Jr., Woodrum & Gregory, Roanoke, Va., W. M. Darden, Jr., Plymouth, N. C., and Wolcott, Wolcott & Payne, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, and BOREMAN and R. DORSEY WATKINS, District Judges.

PER CURIAM.

B. W. Kelly, an unlicensed real estate broker, and C. E. Holcomb, a sawmill operator, appellees, sued Curtis Turner and Hugh Rakes, loggers and promoters, appellants, on an oral contract for commissions arising from the introduction by appellees to appellants of a purchaser for timber land in the sale of which appellants had an interest. The jury brought in a verdict for appellees in the amount of $125,000, being ten per cent of the sale price of the land bought by the person introduced by them. Upon announcement of the verdict, appellants orally moved that the verdict be set aside as contrary to the law and the evidence, and for objections to the charge taken in Chambers. The court immediately, and without hearing argument, denied the motion.

Appellants ask for reversal on the grounds (a) that the evidence of appellees was inconsistent and contradictory, and, "did not prove their case by a preponderance of the evidence"; (b) that there was error in the admission of, and the court's charge as to, evidence of transactions between the parties prior to the date of the contract in suit; (c) that there was error in admitting proof of prior felony convictions of Rakes [1]; and (d) that the court erred in declining to poll the jury separately and individually.

## I

### Sufficiency of the Evidence.

In their answer, appellants pleaded as a defense the failure of appellees to state a claim against appellants upon which relief could be granted. Appellants did not, however, at any time during the trial move for a directed verdict, and we have no occasion to consider this point, Black, Sivalls & Bryson v. Shondell, 8 Cir., 1949, 174 F.2d 587, 591; Funk v. Seaboard Air Line Railway Co.,

---

[1]. Formally abandoned in the argument of the appeal.

5 Cir., 1954, 212 F.2d 434, 435, certiorari denied 1954, 348 U.S. 835, 75 S.Ct. 49, 99 L.Ed. 659, rehearing denied 1955, 348 U.S. 921, 75 S.Ct. 290, 99 L.Ed. 722. Reviewing the evidence insofar as necessary for a determination of the remaining points, the jury could have found that the parties met at Rocky Mount airport on Sunday, February 20, 1955 at nine o'clock in the morning, and in the presence of Holcomb's son agreed that if appellees were the procuring cause of the sale of all or any of the land in the sale of which appellants were interested, appellants would pay appellees ten per cent of the price paid for the land so purchased; that appellees introduced one J. D. Parker to Rakes as a prospective purchaser; that thereafter Parker purchased part of the land for $1,250,000; that after Parker came into the picture, Rakes said in Mrs. Holcomb's presence that appellees were working together on a ten per cent basis; and that subsequently, in the presence of Holcomb's son, Holcomb asked Turner "when they were going to settle up their percentage with" him and Kelly, and Turner replied that Parker had not made a sufficient down payment and Turner and Rakes did not have their money at that time, but as soon as Parker settled for the purchase of the land, they in turn would settle with Holcomb and Kelly.

All of this was categorically denied[2], but the conflict presented a typical jury question.

## II

### Admissibility of Prior Dealings; Charge of Court Thereon.

Appellees offered testimony from the stand and by deposition that in the summer of 1954 Rakes met Holcomb, told him that "they" had a large tract of timber land at Roper, North Carolina, and asked him if he knew of anyone who would be interested in buying it. Holcomb took the matter up with his employer, a lumber manufacturer, and the three made a trip to examine the timber. Holcomb's employer found that the proposition was too large for him to handle. Holcomb was interested in a more detailed determination of the available lumber, and within a week took another trip to the woods with Rakes, and a week or two later the two made a third trip. Holcomb was convinced that the property contained a substantial amount of timber. He then communicated with the manager of a retail lumber and building supply house to try to interest him in buying timber, as Rakes had promised Holcomb $25,000 if Holcomb could help him sell it.

Holcomb and the manager made a trip to determine the general boundaries of the tracts. The manager was interested, and Holcomb arranged a meeting with Rakes at which Rakes presented estimates and maps. Thereafter the manager, Holcomb and Rakes visited the property, and then made three or four additional trips. These negotiations extended into December 1954. However, the manager was not able to arrange satisfactory financing.

In the course of these latter trips Rakes told Holcomb that the price for the whole property was approximately $3,000,000, the different areas varying in price with the amount of timber.

About the first of December Rakes introduced Turner to Holcomb as Rakes' partner.

Although no adequate[3] objection was made to the introduction of this evidence, appellants now urge its admission

---

2. Both Rakes and Turner denied the Rocky Mount meeting; Turner testified that on February 20, 1955, he was in Florida, and was supported in this testimony by his wife and brother-in-law; and both Turner and Rakes testified that they had never in their lives seen Kelly until they walked into the court room for the trial of this case.

3. Holcomb had testified at length on these transactions before an objection was made, on the ground that if prior negotiations were admitted "we will be here a long time, the details are nothing but time consuming * * *." No objection was interposed to the introduction of portions of the depositions of the two prospective purchasers.

as error. But even if timely objections had been made, the evidence could properly have been admitted for limited purposes. If believed, it showed a familiarity of Holcomb with the property, and a prior relationship between Holcomb and Rakes (and Turner, as Rakes' partner) in an effort to sell the timber. This might have been significant to the jury in deciding the critical question of whether the Rocky Mount meeting ever occurred. The jury might have considered appellees' testimony less plausible if neither had had any prior knowledge of the property, or that Rakes and Turner were interested in selling. It might render less improbable the very informal undertaking of personal responsibility by appellants on an oral agreement on which $125,000 was being claimed.

But although relevant for such purposes, this evidence unless carefully limited might easily mislead a jury into the conclusion that the earlier arrangement with Holcomb carried forward, and that the alleged Rocky Mount meeting was not the indispensable requirement for any recovery, but simply a modification of an existing, enforceable and continuing agreement.

In its charge the court fairly and adequately instructed the jury as to the contentions of the parties and the necessity for an agreement to pay the claimed ten percent commission, and that appellees be the procuring cause of the sale. This was followed by unexceptionable references to the question of credibility of the witnesses, and the prior felony convictions of Rakes.

The charge concluded (except for instruction as to the form of the verdict) as follows:

"There was some evidence introduced at the beginning of the case with reference to a contract Mr. Holcomb was supposed to have had with Mr. Rakes for $25,000 for producing a purchaser for a certain tract of land. The Court tells you that you should *disregard that testimony in arriving at the amount* of the verdict, if you should find for the plaintiffs, *but you may consider it for other purposes*, but this case is based upon another contract in which the plaintiffs claim they are entitled to ten per cent of this $1,250,000 and if you should find for the plaintiffs, you *will not consider the amount* of $25,000 in arriving at your verdict." (Emphasis supplied.)

To this portion of the charge appellants excepted, because "the Court erred in telling the jury that the other contract between Rakes and Holcomb could be considered by the jury in determining their verdict, based on the contract now sued upon."

The Court replied: "You understood I instructed them they could not consider it *in arriving at the amount* of any verdict for the plaintiffs?", and did not enlarge the charge.

■ When the last thing the jury heard was that the prior Holcomb-Rakes arrangement could not be considered in arriving at the "amount" of the verdict, but could be considered for "other purposes", which "other purposes" were not defined except by exclusion with respect to the "amount" of the verdict, we are unable to say that appellants were not materially prejudiced. For this error in instructions the case must be remanded for a new trial.

### III

#### *Polling of the Jury.*

When the jury returned its verdict, counsel for appellants moved that the jurors be polled individually. The motion was denied. The court then asked the jury as a group if "each agree that this is a unanimous verdict" to which they replied in the affirmative; and then asked "if any of you have any exception to the report of the foreman", to which no response was given.

■ The briefs of appellants and appellees did not refer to any Virginia Stat-

ute or decision [4] on the question of polling juries in civil cases; and at the argument counsel were unable to advise the court as to the practice in the Virginia state courts. On this record, the determination of the trial court whether or not to "poll" the jury in a civil case would be discretionary; but we venture to suggest that if a jury is polled, individual questioning would appear to be consonant with the etymological derivation of the term, and with the apparent trend of authority. 89 C.J.S. Trial § 490; 53 Am. Jur., Trial, section 1015; 2 Barron and Holtzoff, Federal Practice and Procedure (Rules Ed.), section 1060.

Reversed.

4. In Baltimore & Ohio R. Co. v. Polly, Woods & Co., 1858, 14 Grat. 447, 55 Va. 447 (not cited by the parties to this appeal) it is not clear whether or not the question asked was addressed to the jury individually or as a group.