773 F.2d 1421
 41 UCC Rep.Serv. 1233, Prod.Liab.Rep.(CCH)P 10,674
 Steven B. KLEIN and Claudia C. Klein, Appellees,
v.
SEARS ROEBUCK AND COMPANY, A New York Corporation, Appellant,
and
Murray Ohio Manufacturing Company, Inc., An Ohio
Corporation, Defendant.
Steven B. KLEIN and Claudia C. Klein, Appellants,
v.
SEARS ROEBUCK AND COMPANY, A New York Corporation, Appellee,
and
Murray Ohio Manufacturing Company, Inc., An Ohio
Corporation, Defendant.
 Nos. 84-1681(L), 84-1682.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 6, 1985.
Decided Sept. 17, 1985.
 
 Arthur L. Klein, Chicago, Ill., (Kurt J. Heinz, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., James K. Archibald, John H. Morris, Jr., Venable, Baetjer & Howard, Baltimore, Md., on brief), for appellant.
 George W. Shadoan, Rockville, Md., for appellees.
 Before SPROUSE and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 SPROUSE, Circuit Judge:
 
 
 1
 Sears, Roebuck and Co. appeal from a judgment entered in this diversity case after a jury verdict awarding Steven B. Klein $633,000 compensatory damages and his wife Claudia Klein $104,000 for lost consortium due to Steven's injuries received in a riding lawn mower accident. Klein, a jeweler, received extensive and severe injuries to his right hand when the mower overturned while he was cutting grass on a 19% incline slope and his hand came into contact with the rotating mowing blade. The issues were submitted to the jury on theories of express and implied warranties of fitness for a particular purpose and negligent misrepresentation. Sears contends that the court erred in not granting a directed verdict or judgment n.o.v. because there was not sufficient evidence to sustain the verdict; in allowing evidence of the lack of a safety device; in failing to instruct on proximate cause; and in failing to set aside both awards as excessive. The Kleins cross-appeal contesting the denial of leave to file an amendment to their complaint to assert a claim against Sears for punitive damages. Finding no reversible error except that relating to the issue of consortium, we affirm the award of compensatory damages to Steven Klein. We reverse the award of damages for lost consortium, however, finding insufficient evidence to support it. We also affirm the district court's denial of leave to amend the complaint.
 
 
 2
 Steven and Claudia Klein were married in the fall of 1979. In February 1980, they moved to a new home in Silver Spring, Maryland. Steven's parents came for a visit in May, 1980 and decided to buy a riding mower as a gift for Steven and Claudia. Claudia and Steven's parents went to a local Sears store where they consulted with a Sears salesman about the intended purchase.
 
 
 3
 The three of them informed the salesman that they had no experience with lawnmowers and that the property on which the mower was to be used was a 3/4 acre tract containing numerous hills. The salesman recommended a Sears Craftsman, eight horsepower electric start rear engine riding mower with a 30-inch cutting deck.[1] The sale, however, was conditioned on an inspection of the Kleins' property, to be conducted at the time of delivery of the mower.
 
 
 4
 A few days later, the Sears salesman delivered the mower to the Kleins' residence. At this time, the salesman conducted an inspection of the property and pronounced the mower suitable for mowing the property, although he warned that the mower should be driven vertically up and down the hills.
 
 
 5
 Steven used the mower without incident from late May throughout the summer and early fall of 1980. On April 18, 1981, the first day that Steven mowed that year, he was mowing vertically up a 19? slope on the property when the mower tipped over backwards and Steven's hand came in contact with the rotating mower blade. His right thumb and part of his right index finger were severed, all of his fingers were fractured, and he suffered extensive lacerations and nerve damage to his right hand. At trial, the orthopedic surgeon who treated Steven testified that Steven had suffered an 80% permanent impairment of his entire right arm, including his right hand. The doctor also testified that Steven had undergone nine surgical procedures.
 
 
 6
 At the time of the accident, Steven was employed as a jeweler--a talent that he had developed over many years. The injuries to his right hand, however, rendered continued employment in this capacity an impossibility. After receiving physical therapy, he returned to work as the manager of a jewelry store, a position at which he earned approximately $175 per week less than what he would have earned as a jeweler. The evidence proved also that Steven must take medication for pain for the rest of his life--forty years according to actuarial figures. Additionally, the evidence demonstrated that he can no longer play tennis or other sports, is saddled with a disfiguring and highly conspicuous injury, and must wear a device on his hand designed to maintain his fingers in a stationary position while he is sleeping.A.
 
 Sufficiency of Evidence
 
 7
 Although the complaint alleged other grounds for relief, including negligent design and strict liability, the case was submitted to the jury only on the theories of express and implied warranties and negligent misrepresentation. The jury found for Sears on the negligent misrepresentation question, so the issues on appeal relate only to express and implied warranties.
 
 
 8
 Under Maryland law, recovery for breach of warranty requires proof of three elements: (1) the existence of a warranty, (2) a breach of the warranty, and (3) harm proximately caused by the breach. Mattos, Inc. v. Hash, 279 Md. 371, 368 A.2d 993 (1977).
 
 
 9
 An express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Md.Com.Law Code Ann. Sec. 2-313(1)(a) (1975). Sears contends that the statements made by their salesman, both at the store and at the Klein's residence, were insufficient to constitute express warranties because they were statements of opinion or commendation. See Md.Com.Law Code Ann. Sec. 2-313(2) (1975). Sears also urges that the sale was completed at the Sears store and thus any later statements were necessarily not part of express warranties. See Thomas v. Ford Motor Credit Co., 48 Md.App. 617, 429 A.2d 277 (1981).
 
 
 10
 The implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Md.Com. Law Code Ann. Sec. 2-315(1) (1975). Sears fails to advance any argument that no implied warranty emerged from the facts of this case.
 
 
 11
 If express or implied warranties did arise, Sears argues that they were limited to include only a warranty that the mower was fit to cut grass safely when used properly. See Myers v. Montgomery Ward & Co., 253 Md. 282, 252 A.2d 855 (1969). Sears also contends that the fact that Steven used the mower during the first mowing season without mishap prevents the Klein's from satisfying the requirement that the mower did not conform to the representations of the warranty at the time it left their control. Fellows v. USV Pharmaceutical Corp., 502 F.Supp. 297, 299 (D.Md.1980); Sheeskin v. Giant Food, Inc., 20 Md.App. 611, 630, 318 A.2d 874 (1974).
 
 
 12
 Finally, Sears maintains that the evidence fails to support a finding that the alleged breach was the proximate cause of Steven's injury, arguing that because Steven was operating the mower on a slope in excess of 15 degrees, contrary to the instructions contained in the Owner's Manual, it was Steven's intervening activities that caused the unfortunate accident.
 
 
 13
 In testing the sufficiency of the evidence, we must view the evidence in the light most favorable to the jury's verdict and afford the prevailing party the benefit of all reasonable inferences which can be drawn from the evidence. Krotkoff v. Goucher College, 585 F.2d 675, 677 (4th Cir.1978). Applying this standard, we believe that there is ample evidence to support the jury's conclusion that Sears made and breached express and implied warranties and that the breach was the proximate cause of Steven's injury.
 
 
 14
 Claudia Klein testified that she and Steven's parents told the Sears salesman of the intended use of the mower and that the salesman responded by suggesting that they purchase the specific model involved here. She also testified that although payment was made at the Sears store, the sale was contingent upon an inspection of the Kleins' property by the salesman and was not finalized until the salesman pronounced the mower safe for use on the Kleins' property. The salesman essentially corroborated Claudia's testimony. We believe it was reasonable for the jury to find, under these circumstances, that an express warranty was created.
 
 
 15
 There was also ample evidence presented that Claudia and Steven's parents relied on the Sears salesman to recommend a suitable mower and that the salesman had reason to know of both their reliance and the particular purpose for which the mower was being purchased. This was sufficient to constitute an implied warranty of fitness for a particular purpose.
 
 
 16
 We also find adequate evidence to support the finding that Sears breached the warranties. Assuming the accuracy of Sears' assertion that it only promised that the mower was fit to cut grass safely when used properly, there was ample evidence that Steven was operating the mower in a manner consistent with the representations made by Sears' salesmen, i.e. vertically on a slope that was pronounced safe.
 
 
 17
 Likewise, Sears' assertions regarding proximate cause involve factual issues properly resolved by the jury. Throughout the trial, Sears contended that Steven's misuse of the mower was the proximate cause of the accident while the Kleins countered that the mower was unsuitable for its intended use. While there was evidence presented on both sides of this issue, the jury obviously was convinced that the accident was caused by the failure of the machine to conform to the express and implied warranties.
 
 B.
 Evidence of Lack of Safety Device
 
 18
 Sears next contends that the court erred in permitting the introduction of evidence showing that there was no "deadman's switch"[2] on the riding mower. It argues that such evidence was not relevant to the warranty issues and improperly injected into the trial considerations of negligent design and strict product liability.
 
 
 19
 The absence of a "deadman's switch" was adverted to in the Kleins' opening statement. Additionally, two of the Kleins' witnesses, an expert in safety analysis and a mechanical engineer, also referred to the absence of the device. The "deadman's switch" issue also arose during cross-examination of Sears' engineer and in the rebuttal portion of the Kleins' closing argument.
 
 
 20
 Sears argues that, because the Kleins limited the issues to breach of warranty and negligent misrepresentation, the evidence concerning the absence of a "deadman's switch" was wholly irrelevant and served only to inflame and prejudice the jury. We disagree.
 
 
 21
 The evidence was relevant to the Kleins' breach of express warranty claim. The jury could have inferred that the warranty created by the salesman's statement at the Kleins' residence contemplated that the mower would operate safely on their lawn, would not overturn in mowing the existing slopes, and, if it did overturn, would not injure the operator. Thus, the evidence regarding the instability of the mower was relevant to the accident, while the evidence regarding the failure to incorporate the "deadman's switch" was relevant to the injury.[3]
 
 
 22
 Nonetheless, Sears contends that even if the "deadman's device" was admissible, the trial judge was required to give an immediate limiting instruction, citing United States v. McClain, 440 F.2d 241, 246 (D.C.Cir.1971). Sears' reliance is misplaced.
 
 
 23
 In the first place, McClain involved the admission into evidence of prior violent acts at a trial for second degree murder--a criminal case.[4] Further, the principle enunciated in McClain has been modified considerably in subsequent cases, United States v. Lewis, 693 F.2d 189, 196-97 (D.C.Cir.1982). The more modern approach is to defer to the trial court's discretion as to the timing of the limiting instruction even in criminal trials. See United States v. Dabish, 708 F.2d 240, 243 (6th Cir.1983); United States v. Weil, 561 F.2d 1109, 1111 (4th Cir.1977).
 
 
 24
 During the course of the trial, the district judge expressed some doubt as to the propriety of admitting evidence on this issue and stated that he intended to give a limiting instruction to the jury. He later instructed the jury:
 
 
 25
 During the course of the trial there has been considerable testimony about what has been referred to as a deadman's control. This is not, however, a design product--or product design case and most of that testimony is irrelevant and whether or not that control was present is basically an irrelevant matter to you. It has been admitted for certain limited purposes, but as I say, again, this is not a product design case and therefore, much of that testimony has no relevance in this case.
 
 
 26
 Sears maintains that this instruction was wholly inadequate and mandates reversal.
 
 
 27
 We first note that Sears, although given the opportunity, failed to object to the limiting instruction pursuant to Fed.R.Civ.P. 51,[5] and Sears did not offer limiting instructions of its own. Such failure insulates the instruction from reversal unless the instruction given amounts to plain error affecting substantial rights of the parties. United States v. Rowe, 565 F.2d 635, 638 (10th Cir.1977); United States v. Hollinger, 553 F.2d 535, 546 (7th Cir.1977); cf. United States v. Barge Shamrock, 635 F.2d 1108, 1111 (4th Cir.1980), cert. denied sub nom. Shell Oil Co. v. United States, 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981) (issue may be addressed if error is plain and refusal to treat it would result in denial of fundamental justice). Beyond that, it appears that the jury was adequately instructed. We agree that the limiting instruction should have been more specific but reviewing all of the instructions as a whole, we are convinced that from them the jury should have understood the limited purpose for which they could consider the evidence relating to the deadman's switch.
 
 C.
 Court's Proximate Cause Instructions
 
 28
 Sears maintains that the issue of proximate cause was not clearly presented to the jury by either the court's instructions or special verdict form. Sears submitted a "Verdict Form, Including Special Interrogatories for the Jury" that included, among other things, three proposed questions:
 
 
 29
 1. How do you find on the breach of express warranty claim?
 
 
 30
 2. How do you find on the breach of implied warranty of fitness for a particular purpose claim?
 
 
 31
 3. How do you find on the negligent misrepresentation claim?
 
 
 32
 The special verdict form ultimately submitted to the jury included:
 
 
 33
 1. Did the defendant make and breach an express warranty of fitness for a particular purpose?
 
 
 34
 2. Did the defendant breach an implied warranty of fitness for a particular purpose?
 
 
 35
 3. Did the defendant make a negligent misrepresentation?
 
 
 36
 Sears argues that the verdict form used by the court erroneously omitted the element of proximate cause and that this error was compounded by the court's inadequate jury instructions on this issue. It is settled in this jurisdiction that the formulation of issues and the form of interrogatories is committed to the sound discretion of the trial judge. Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1060 (4th Cir.1976). In considering the adequacy of the verdict form, we consider several factors, including whether the interrogatories adequately presented the contested issues to the jury when read as a whole and in conjunction with the general charge, whether submission of the issues to the jury was fair, and whether the ultimate questions of fact were clearly submitted to the jury. Tights, Inc., 541 F.2d at 1060. Of almost prescient relevance is the statement of this court in Cunningham v. M-G Transport Services, Inc., 527 F.2d 760, 762 n. 1 (4th Cir.1975):
 
 
 37
 The drafting of special interrogatories is largely a matter of common sense and local practice, for example, proximate causation might be submitted as a separate issue if thought appropriate. They may be as detailed as counsel and the district court wish to make them, and the particular verbiage used is of no great consequence so long as the questions were framed so that the jury knows what it is deciding.
 
 
 38
 See also Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1516 (Fed.Cir.1984) ("must be viewed in light of the entirety of events at trial").
 
 
 39
 We feel that the instructions given by the trial judge were sufficient to apprise the jury of the need for a finding that Steven's injuries were proximately caused by the failure of the mower to conform to the relevant warranties. In instructing the jury on the breach of warranty theory, the court instructed that "[a] Seller, Sears, for example, is responsible to a person who sustains an injury only if the injury proximately results from the failure of the product to conform to a statement that constitutes a warranty." The instruction on negligent misrepresentation included the element "that the Plaintiffs suffered damages proximately caused by the Defendant's negligence." In its general instructions to the jury, the court, after explaining the plaintiffs' theories, stated:
 
 
 40
 The Defendant, on the contrary, maintained that there were no warranties created with regard to the area where the accident occurred, and that even if the warranties were created, that the accident occurred not because the lawn mower was unsafe for the lawn where it was being used, but rather because Steven Klein, who was operating the lawn mower, was misusing the machine when the accident occurred.
 
 
 41
 The court's instructions paralleled the evidence presented on this issue and together they clearly defined for the jury the question of proximate cause. Aside from the issue of whether the Sears salesman had warranted the lawnmower as alleged, the keystone of Sears' defense was whether Steven Klein had been mowing his yard in accordance with the instructions given by the salesman-- i.e., whether the proximate cause of the accident was the unsuitability of the mower or operator misuse. As Sears' counsel stated in his opening argument:
 
 
 42
 The case really is going to come down to, when it gets down to it, I am convinced of it, one really significant question, was it an error in the operation of that particular mower on that day that caused it to flip over or was it unfit for use, an improper mower and that is why it flipped over.
 
 
 43
 Further, during closing argument, counsel for Sears stated, "I remain of the view that the fundamental issue in this case, was it operator error or was that mower unfit for use on that slope ... when the accident occurred? It was a fundamental issue when the case began, it remains a fundamental issue here today." The Kleins and Sears each submitted evidence supporting their version of the facts bearing on these issues and the jury, adequately instructed, reviewed a verdict form substantially in the form submitted by Sears but in any event sufficiently adapted to the issues and facts that we cannot say that the court abused its discretion.
 
 
 44
 Viewing all of the instructions and the evidence, we find no abuse of discretion in the selection of the verdict form or in the jury's instruction.
 
 D.
 Damages
 
 45
 Finally, Sears contends that the trial court committed reversible error by failing to set aside as excessive the jury's award of $633,000 to Steven Klein and an additional $104,000 to Claudia for loss of consortium. A trial court in its discretion may set aside a verdict and grant a new trial if the "verdict is so excessive that it cannot be justified by anything in the record or of which the Court can take judicial notice[.]" Virginian Railway v. Armentrout, 166 F.2d 400, 407 (4th Cir.1948). Our review of the trial court's decision, however, "is limited to ascertaining whether the decision amounts to an abuse of discretion." Occidental Life Ins. Co. v. Pat Ryan & Assoc., Inc., 496 F.2d 1255, 1264 (4th Cir.1974).[6]
 
 
 46
 In our view, the district judge's refusal to set aside the $633,000 award to Steven Klein was not an abuse of discretion. The record reveals that Steven Klein's disfiguring injury required numerous operations and continuing medical treatment as well as the administering of pain-killing drugs. There was evidence of future economic and social limitations, future pain and suffering, and loss of 80% of the use of Klein's dominant hand. More difficult to quantify, but nonetheless compensable, is the thwarting of Steven Klein's aspiration to become a bench jeweler, which according to his testimony he had nourished since childhood. Further, there was evidence that Steven had attained some proficiency as a painter and tennis player--hobbies which he can no longer pursue. As a reviewing court, we cannot say that this evidence was so deficient that the trial judge, intimately familiar with it, abused his discretion by not setting aside the verdict as excessive.
 
 
 47
 The only evidence pertaining to Claudia's claim of loss of consortium, however, was her testimony about household and personal grooming activities that Steven could no longer perform as a result of the accident. The Kleins argue that evidence as to the loss of consortium was limited because it is a sensitive issue and that the evidence they submitted was sufficient for the jury to infer this loss. While loss of consortium may be inferred in some instances, Nicholson v. Blanchette, 239 Md. 168, 182, 210 A.2d 732 (1964) (40 year marriage, wife rendered permanently crippled and bedridden), the Kleins did not offer sufficient evidence upon which that inference could be made. We therefore reverse that portion of the award and instruct the court to enter a judgment for Sears on the consortium claim.
 
 E.
 Punitive Damages
 
 48
 The trial court was clearly correct in refusing to allow Klein to amend his complaint to include a demand for punitive damages and that action on the part of the trial court is affirmed.
 
 
 49
 The compensatory damage award of $633,000 to Steven Klein is affirmed.
 
 
 50
 The consortium award of $104,000 is reversed with directions.
 
 
 51
 AFFIRMED IN PART, REVERSED IN PART WITH INSTRUCTIONS
 
 
 
 [1]
 The mower in question was manufactured by Murray Ohio Manufacturing Company, Inc. which was originally named as a defendant in this suit. All claims against Murray, however, were dismissed without prejudice prior to trial
 
 
 [2]
 A deadman's switch is a device designed to stop the rotation of the mower blade when the driver leaves the seat
 
 
 [3]
 The jury obviously understood this distinction. In response to special interrogatories posed to them after they had reached their verdict, the jury found that the absence of a deadman control did not make the mower unsafe for use on the Kleins' property although it was a cause of his injury
 
 
 [4]
 Turner v. Kelly, 262 F.2d 207 (4th Cir.1958) and Werner v. Upjohn Co., Inc., 628 F.2d 848 (4th Cir.1980) are also inapposite. Each involved the admission of otherwise irrelevant evidence for a limited purpose. The evidence in this case regarding the absence of a "deadman's switch" was relevant to one of the issues, so Turner and Werner are distinguishable
 
 
 [5]
 "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Fed.R.Civ.P. 51
 
 
 [6]
 The proper scope of this "abuse of discretion" standard has been the subject of some debate. While early cases held that an amount fixed by a jury was an unreviewable factual finding, Barnes v. South Carolina Public Service Authority, 120 F.2d 439 (4th Cir.1941), in Armentrout, supra, this Court took the position that it is within the power and duty of a federal appellate court to review and determine whether or not the trial court abused its discretion by failing to set aside an excessive verdict. In Neese v. Southern Railway Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955) (per curiam), the Supreme Court summarily reversed a decision of this court applying a normative abuse of discretion standard, reasoning that "the action of the trial court was not without support in the record, and accordingly ... its action should not have been disturbed by the Court of Appeals." Id. In Grunenthal v. Long Island Railroad Co., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968), the Supreme Court recognized the more deferential standard of Dagnello v. Long Island Railroad Co., 289 F.2d 797 (2nd Cir.1961) which held that appellate determination of whether a trial court abused its discretion in denying a motion to set aside a verdict as excessive required that the court of appeals conduct a detailed appraisal of the evidence, giving the benefit of every doubt to the judgment of the trial judge, and reverse only if this examination reveals the award to be "grossly excessive, inordinate, shocking to the judicial conscience ... [or] monstrous." 393 U.S. at 159 and n. 4 (quoting Dagnello, 289 F.2d at 802). We approved a similar standard in Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012 (4th Cir.1965) where the court stated:
 We operate in a narrower area of discretion than district courts in the supervision of jury verdicts. It is not enough if our appraisal of a jury's calculation of damages does not run parallel to the trial judge's appraisal. In reviewing the justness of a verdict the broader scope of discretion is in the trial judge, and the Supreme Court has made it plain that the appellate court must stand aside. The Court has acknowledged the possibility of appellate intervention only in the most extreme circumstances, as where the verdict is not merely excessive but "monstrous," a term borrowed from the old English case, Beardmore v. Carrington, 2 Wilson 244 (1764).
 Id. at 1020.
 Since the district court's refusal to set aside the award to Steven Klein was not an abuse of discretion under any standard of deference and the award to Claudia Klein was wholly unsupported by any evidence, the facts of this case do not present a proper setting for an attempt to harmonize the various expressions of these cases or to address any unresolved issues posed by them.