814 F.2d 655
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Helen Christine VIDA, Personal Representative of the Estate
of Walter John Vida, deceased, Appellant,
v.
PATAPSCO & BACK RIVERS RAILROAD COMPANY, a body corporate, Appellee.
 No. 86-1559.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 13, 1986.
Decided March 17, 1987.
 
 Before RUSSELL and HALL, Circuit Judges, and McMILLAN, United States District Judge for the Western District of North Carolina, sitting by designation.
 Richard R. Beauchemin (Gerald F. Gay; Arnold, Beauchemin & Tingle, P.A., on brief), for appellant.
 Rudolph Lee Rose (Robert T. Franklin; Semmes, Bowen & Semmes, on brief), for appellee.
 RUSSELL, Circuit Judge:
 
 
 1
 This wrongful death FELA action has been twice tried. The first trial resulted in a verdict in favor of the plaintiff, who is the personal representative of the deceased. After such verdict the district judge granted the motion of the defendant Railroad for a new trial. At the second trial the verdict of the jury was for the defendant. It is from the judgment entered on this second verdict that this appeal by the plaintiff is taken.
 
 
 2
 Among the grounds for appeal are two objections to the jury instructions on the second trial.[1] One of these objections is directed at the submission by the district judge of the issue of the deceased's contributory negligence. We are satisfied from a review of the record that the district judge did not err in submitting such issue to the jury. In its second claim of error the plaintiff complains of the failure of the district judge to instruct the jury that the deceased did not assume the risks of his employment. While it is true that assumption of risk is not a proper defense in an FELA action, it does not follow that the district court must give such an instruction if requested. In fact, most of the cases in which the question has arisen have found such an instruction confusing and for this reason the district judge's determination not to give the instruction will not to be disturbed on appeal. See Clark v. Pennsylvania R. R. Co., 328 F.2d 591, 595 (2d Cir. 1964). Nor, as the district judge stated, will the fact that counsel for the Railroad merely referred in his closing argument to the "hazardous" nature of railroading make the instruction necessary. The plaintiff's primary claim of error, and the only one requiring any elaboration, is the granting by the district judge of a new trial after the first trial. For the reasons hereafter stated, we find no reversible error in the granting of a new trial after the first trial and we therefore affirm the judgment below.
 
 
 3
 To understand the challenge to the district court's grant of a new trial, we must outline the facts which resulted in the death of the intestate. The deceased was employed as a brakeman by the defendant Railroad and at the time of his death on April 11, 1982 he was working on the night shift (3 p.m. to 11 p.m.) of a crew consisting of himself and an engineer named Manion engaged in switching operations in the yards of the Sparrow Point plant of Bethlehem Steel Corp. As he and Manion were concluding their shift and making their last "cut-out", the deceased, standing at a point between the moving track and a short spur track, gave Manion a clear back-up signal with his lantern. Manion proceeded to back the train pursuant to the deceased's signal at a "walking speed" until he reached the place where he was to cut off his final switch. Manion did not see the deceased after the latter gave him the back-up signal. A short time later the body of the deceased was found in the middle of the track where he had been when he signalled Manion. There were no witnesses to the accident resulting in the death.
 
 
 4
 The plaintiff is the deceased's widow and the personal representative of his estate. As such she has filed this action alleging that the deceased's death was caused by the Railroad's negligence. In response to an Interrogatory addressed to her by the Railroad, the plaintiff identified the specific acts of negligence on which she relied for her right of recovery as
 
 
 5
 that the premises where he was required to work were unsafe, due to the lack of lighting, that the crew members working with the decedent were not attentive to nor did they know where he was located at the time of the movements made by the crew at the point where the accident occurred; that the Defendant's crew did not see any more signals from the decedent but yet continued to operate the train and caused the injuries to the decedent resulting in his death; that the Defendant and its employees failed to properly supervise the movements being made at the time of the occurrence.
 
 
 6
 In the Pre-Trial Order, agreed to by the parties on July 10, and submitted to them to the district court on the date of trial on July 23, 1985, the plaintiff set forth the facts on which she expected to rely and prove as the grounds for her charge of negligence on the part of the Railroad. She said:
 
 
 7
 The Plaintiff contends that the Defendant was negligent in causing the injuries which resulted in the decedent's death by failing to furnish the Plaintiff's decedent with a reasonably safe place in which to work in that the area where the decedent was required to work was dark and three of the crew members were not in their positions on the train crew at the time of the accident causing the decedent's death. The Plaintiff contends that the conductor of said crew was not on the scene and was not in charge of the train as his duties require, that the engineer of said crew had left the property completely and had he been seated on the fireman's seat at the time of the occurrence, the decedent would not have placed himself in any jeopardy insofar as the accident was concerned. The Plaintiff further contends that the employee fireman who was operating the engine continued to move said movement after the light of the decedent disappeared. That when the decedent was found missing, the engine was operated several times over the area where the decedent was killed. That the Defendant failed to provide adequate lighting at the scene of the accident; that the movement was made without a signal from the decedent and without knowing the location of the decedent at the time of said movement and that the Defendant and its employees failed to properly supervise a movement being made at the time of the occurrence.
 
 
 8
 As the trial began, the Railroad raised objections to a proposed exhibit of the plaintiff. This exhibit was the report of a police investigation conducted shortly after the accident resulting in the death of the deceased. The Railroad's objection was two-fold. First, it said the report could only be admitted on the basis of the investigating officer's report. However, that officer had not been listed as a witness in the plaintiff's response to an Interrogatory requesting such information. Beyond that, it perceived the purpose of the introduction of the report to be the admission in the record of a new theory of liability, predicated on the claim that the defendant had violated its duty to provide the deceased a safe place to work by permitting a piece of wire to be in the darkened area where the deceased was working at the time of his death and that it was this piece of wire, referred to in the police investigation, on which it was to be argued that the deceased tripped and fell. The Railroad urged that this would have brought into the case a new ground of recovery not identified in either plaintiff's reponse to the Railroad's Interrogatory or in the Pre-Trial Order agreed upon by the parties. It posited that, to permit the police officer to testify, and to introduce the new theory of negligence on eve of trial would be unfair and prejudicial, since it had not earlier sought in discovery to inquire into this new theory or to depose the police officer.
 
 
 9
 The plaintiff's response to this argument of the Railroad was that she had only become aware of the report of the police investigation on June 28, about a month before trial, as a result of the production by the defendant of a report of such investigation. On the other hand, the Railroad contends it was unprepared to contest this new claim of negligence first advanced at the commencement of trial. It complained of not having any opportunity to investigate the claim, to depose the witness who made the investigation, and to pursue other relevant facts. It argued--though the relevance of this argument may be doubtful--that at the second trial it was able to present other evidence on this claim, based on an investigation conducted after the first trial, that refuted the plausibility of this claim--evidence which apparently satisfied the second jury. Whether this is a fair inference may be debated. But in any event, the district judge who presided at the first trial concluded from his observations during the trial that the matter of prejudice to the Railroad by reason of the introduction into the trial of this new theory based as it was on new evidence was sufficiently plausible that he felt that justice required the granting of a new trial. After some discussion, the district judge delayed any ruling on the conflicting positions until the exhibit was offered in evidence and the police officer was presented as a witness. However, when that point was reached later in the trial, the district judge sustained the use of the police officer as a witness for the plaintiff and in effect allowed the plaintiff to rely on this evidence and the report of the investigation to support a new act of negligence not heretofore advanced in the trial.
 
 
 10
 After submission of the cause to the jury, a verdict for the plaintiff was returned. On motion for judgment n.o.v. or for a new trial by the Railroad, the district court denied judgment n.o.v.[2] but granted the motion for a new trial. The district court based its grant of a new trial on three grounds of concern: 1) The absence of any real inquiry into the working arrangement of the employees on the shift on which the deceased was engaged at the time of his death; 2) The admission into evidence of the presence of a "piece of wire" at the scene of the accident and the introduction of a new theory of negligence at trial not identified either in the plaintiff's responses to the Interrogatory or in her agreed statement of issues in the Pre-Trial Order; and 3) His concern over the proof of damages. It is this order which is the real issue on the appeal.
 
 
 11
 A motion for a new trial is addressed to the sound discretion of the district judge. Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir. 1985), cert. denied, 106 S.Ct. 1199 (1986). The exercise of such discretion is not as constrained as the power to grant a directed verdict. As we said in Garrison v. United States, 62 F.2d 41, 42 (4th Cir. 1932), quoted with approval in Ellis v. International Playtex, Inc.. 745 F.2d 293, 298 (4th Cir. 1984), "[w]here there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side.... " However, the judge may on a motion for a new trial engage in a "comparison of opposing proofs" and may "weigh the evidence and assess credibility," Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891-92 (4th Cir. 1980), and "set aside a verdict supported by substantial evidence if it is contrary to the clear weight of the evidence, or is based upon evidence which is false 'or is' necessary to prevent a miscarriage of justice," Ellis v. International Playtex, supra. Thus, the trial judge may grant a new trial because the amount of the verdict is not reasonably supported by the verdict, Occidental Life Ins. Co. v. Pat Ryan & Associates, 496 F.2d 1255, 1264 (4th Cir. cert. denied, 419 U.S. 1023 (1974); Virginia Ry. Co. v. Armentrout, 166 F.2d 400, 407 (4th Cir. 1948), and particularly if the amount of the verdict may not be fairly justified by the record, Klein v. Sears Roebuck & Co., 773 F.2d 1421, 1428 (4th Cir. 1985).
 
 
 12
 In our opinion the plaintiff has failed to make such "clear showing" of abuse of discretion by the trial judge in granting a new trial. One of the grounds on which the trial judge based his decision was his "concern [ ] at the amount of damages in view of the proof offered at the time of trial." The plaintiff's proof of damages relied entirely on the computation of loss made by an expert witness. This computation is seriously flawed, as the trial judge seems to have perceived. Thus, in computing the deceased's lost wages, the witness assumed that those wages would increase at the rate of 9 per cent for each year of what the witness found to be the deceased work expectancy. The witness fixed the deceased's work expectancy based on retirement at age 70. Since the deceased was 62 years of age at this death, his work expectancy would have been 8 years, during all of which, under the witness' calculations, the deceased's wages would have increased at 9 per cent each year. This method of calculation would mean a compounding each year of the 9 per cent assumed wage increase. In reaching this conclusion, the witness made no inquiry into the record of increases the deceased had received; this was especially important in assessing the validity of the witness' calculations, because it was conceded at trial that the deceased's employment was under a collective bargaining agreement which froze his wages for four years. In short, in four of the eight years the witness assumed the deceased would have been working and receiving annually a 9 per cent wage increase, even though the deceased would actually have received none.
 
 
 13
 Nor is this the only flaw in the witness' calculations of lost wages. He assumed, as we have seen, that the deceased would have continued working until he was 70, even though the witness admitted that normally an employee would be assumed to retire at 65. Actually in the railroad industry, as demonstrated by the statistics of the American Association of Railroads, the normal age for retirement of working crews was 62. The expert basically explained that he assumed retirement by the deceased at 70 simply because counsel for the plaintiff instructed the expert to use 70 as the assumed retirement date for the deceased. The effect of this was to inflate by almost eight years the deceased's work expectancy. There are other flaws not so apparent as these in the expert's assumption. Yet the expert's testimony was the only evidence adduced on the lost wages of the deceased. It is understandable that the district judge should have been uncomfortable with the proof of loss in this case.
 
 
 14
 There were other matters on damages that the defendant contends were improperly injected into the case. The district court instructed the jury on lost services suffered by the widow as a consequence of the death of her husband. There was no evidence whatsoever of any lost services. Moreover, the plaintiff introduced evidence that could only have been intended to suggest pain and suffering and to induce sympathy. The deceased, according to all the record, died instantaneously and suffered no pain and suffering. These questions no doubt weighed in the district court's consideration of the motion for a new trial.
 
 
 15
 The district judge was also troubled, as he declared in his order, by the possibility of prejudice to the defendant resulting from the introduction at trial of a new ground of liability and the use of a critical witness whose name had not been noticed as required under the district court's discovery order. The importance of this new ground of liability was recognized by the plaintiff's counsel in his opening statement to the jury. In this statement, he declared "first of all that the immediate precipitating cause of this accident was that Mr. Vida [the deceased] was caused to trip and fall across those tracks by a wire that had been left laying around there that got wrapped around his legs causing him to trip and fall." This, the parties concede, was a ground of liability not identified in the Pre-Trial Order in which the parties set forth their positions. It is said that this Order was prepared before the plaintiff knew of the report of the police investigation of the accident. The Order was agreed on by July 10 before the Order was presented to and approved by the district judge on July 23, the day the trial was to begin. The plaintiff, by her counsel, conceded knowledge of the police investigation on which this claim was based on June 28. This was before the parties had agreed on the Pre-Trial Order and almost a month before the Order was signed by the district judge. The plaintiff argues, however, that, even though it might be that she was tardy in calling the matter to the attention of the defendant and court and of requesting an amendment of the Pre-Trial Order, the fact of the matter was that the evidence on which the plaintiff relied for this claim was in the files of the defendant. Under those circumstances, the plaintiff urges that the defendant was not prejudiced by the admission of this evidence. We are unable to assess with the same confidence as the district judge these conflicting views. The district judge, from his vantage point, had a far better opportunity to weigh the arguments of the parties at this point than we who have only a cold record to rely on. We are not disposed to dismiss as unfounded the concerns expressed by him that the defendant may have been unfairly prejudiced in this regard.
 
 
 16
 We have reviewed with some care these two grounds on which the district judge granted a new trial. The district judge stated another ground for his decision, the support for which may not be as clear as the two grounds we have covered. Taking all the grounds together, though, it is plain that the district Judqe's order requesting a new trial did not constitute a clear abuse of discretion.
 
 
 17
 Finally, the plaintiff complains that the judge did not spell out in detail his grounds and that for this ground the granting of a new trial should be reversed. We confronted a similar argument in Ellis v. International Playtex, supra, at 298 and dismissed it with this comment: "A fuller discussion might have been preferable, but brevity is not grounds for reversible error." This same comment is appropriate here. As we have said, the district Judge's qrounds find support in the record and, recognizing the limited nature of our review, we find no abuse of discretion on the part of the district judge and, therefore, affirm the judgment herein.
 
 AFFIRMED
 
 
 [1]
 The plaintiff also complains of the denial of his motion for a new trial after the second verdict. The basis for such motion is that the verdict was against the weight of the testimony. As we point out later, the district court's ruling in this regard may only be reversed for clear showing of abuse of discretion. The plaintiff has made no such showing and the motion was properly denied
 
 
 [2]
 The district court did comment, in denying their motion, that the evidence of negligence in th:s case was as "thin a case" under the FELA as he had seen