

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-5-1995

# United States v Miller

Precedential or Non-Precedential:

Docket 95-1039

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Miller" (1995). *1995 Decisions.* Paper 180.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/180

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 95-1039

———————

UNITED STATES OF AMERICA,
Appellee

v.

CAROL A. MILLER a/k/a CAROL MILLER SALEMO,
Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 93-cr-00406)

———————

Argued April 20, 1995

Before: STAPLETON, HUTCHINSON, and WEIS, Circuit Judges

Filed  July 5, 1995

———————

Samuel C. Stretton, Esquire (ARGUED)
301 South High Street
P.O. Box 3231
West Chester, PA  19381-3231

Attorney for Appellant


Emily McKillip, Esquire (ARGUED)
Assistant United States Attorney
Michael R. Stiles, Esquire
United States Attorney
Walter S. Batty, Jr., Esquire
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-4476

Attorneys for Appellee

———————

OPINION OF THE COURT

———————

WEIS, Circuit Judge.

In this criminal case, defendant contends that the trial court erred when it denied her request for an individual jury poll and instead conducted a collective inquiry. In the circumstances, we conclude that the trial court did not commit reversible error, but we adopt a prospective supervisory rule requiring that jurors shall be polled individually rather than collectively. We also affirm the trial court's rulings rejecting a duress defense and permitting the government to call a witness whom it had impeached in a previous trial.

Defendant Carol A. Miller was convicted on charges of bank fraud, 18 U.S.C. § 1344, and interstate transportation of a stolen vehicle, 18 U.S.C. §§ 2, 2312. She was sentenced to a prison term of twenty-seven months concurrent on both counts, followed by supervised release for three years, and ordered to pay restitution in the amount of $44,500.00.

In February 1991, defendant and her husband, George P. Salemo, engaged in a check-kiting scheme through which they defrauded the Meridian Bank in Allentown, Pennsylvania. Using proceeds from that operation, they purchased an automobile for $98,024.00.

On March 27, 1991, the husband was arrested in Florida. On that same day, defendant, who was also in Florida at the time, telephoned her home in Allentown, Pennsylvania and directed the housekeeper to take the automobile from the garage and park it on

a designated side street.  On the following day, defendant returned to Allentown.

On March 29, 1991, at the behest of the Meridian Bank, the Court of Common Pleas of Philadelphia County served an order on defendant enjoining her and her husband from disposing of any of their assets.  On the next day, the defendant's brother arrived in Allentown.  He located the automobile and drove it to Arizona.  On April 8, 1991, defendant flew to Arizona and, on the following day, sold the car for $89,000.00 in Las Vegas, Nevada.

Before trial, the district court granted the prosecution's motion in limine to bar defendant from presenting evidence of duress.  After the jury returned guilty verdicts on each count charged in the indictment, defendant requested an individual poll of the jurors.  The district judge refused to do so but inquired of the jurors collectively.

Defendant has appealed, raising four issues:
(1)   The district court's denial of an individual poll of the jurors;

(2)   Exclusion of the defendant's duress evidence;

(3)   The government's use of a witness in this case that it had impeached in a former trial; and

(4)   Failure of the district court to depart downward from the Guideline sentence.

I.

Following the charge of the court, the jury deliberated for about an hour and then returned to the courtroom to deliver its verdict.  The record shows that the following occurred:
"THE COURT:  Members of the Jury, I understand you have reached a verdict and the

way the verdict is to be taken will be as follows:  First the Clerk of Court will ask the foreperson as to the results of the verdict form.  Then, of course, you should listen intently while it's going on and then the other 11 persons will be asked whether they agree as a group.  You will be asked whether you agree with the verdict as announced by the foreperson.

"If you do, of course, you will say `yes.'  If you do not agree with the verdict, of course, you should say `no.'  So listen carefully.  If you agree when you are asked collectively, you say `yes.'  If you do not agree, please let us know.  Thank you.

"Would the Clerk take the verdict.

"THE CLERK:  Would the foreperson please rise?
"Have the Members of the Jury reached a verdict by answering the jury verdict form?

"THE FOREPERSON:  Yes.

"THE CLERK:  How do you find the defendant as to Count 1, bank fraud?

"THE FOREPERSON:  Guilty.

"THE CLERK:  As to Count 2, interstate transportation of [a] stolen vehicle?

"THE FOREPERSON:  Guilty.

"THE CLERK:  Thank you.

"THE COURT:  You may be seated.

"[DEFENSE COUNSEL]:  Your Honor, I ask the jury be polled.

"THE COURT:  I am going to do it collectively.  I won't do it individually.

"[DEFENSE COUNSEL]:  I ask for it individually.

"THE COURT:  I deny it.

"THE CLERK:  Members of the Jury, harken onto your verdict as the Court has recorded it in the issue joined this indictment, Number 94-406 and Carol A. Miller, also known as Carol A. Salemo, you find the defendant guilty in the manner and form as she stands indicted as to Count I, and so say you all?

"THE JURY:  Yes.

"THE COURT:  Does any[one] find her not guilty as to Count 1?

(No response).

"THE CLERK:  As to Count 2, your verdict is `guilty' and so say you all?

"THE JURY:  Yes.

"THE COURT:  Does anyone say `not guilty' as to Count 2?

(No response)

"THE COURT:  All right.  Would you take the verdict form?"

Defendant contends that the denial of an individual poll violated Fed. R. Crim. P. 31 and due process as well.

Fed. R. Crim. P. 31(d) does not specify any specific form but provides only that before a verdict is recorded, "the jury shall be polled at the request of any party or upon the court's own motion."

In Humphries v. District of Columbia, 174 U.S. 190, 194 (1899), the Supreme Court characterized polling as "an undoubted right" and explained that "[i]ts object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a

verdict to which he does not fully assent."  Judge Maris, writing for the Court in Miranda v. United States, 255 F.2d 9, 17 (1st Cir. 1958), described the right of the defendant to have the jury polled as being "of ancient origin and of basic importance," designed "to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict . . . ."

Although not of constitutional dimension, the right to a poll has its roots in the early common law.  United States v. Shepherd, 576 F.2d 719, 724 (7th Cir. 1978).  In 2 Sir Matthew Hale, The History of the Pleas of the Crown 299-300 (1st Am. ed. 1847), the text reads:

> "Now touching the giving up of their verdict, if the jury say they are agreed, the court may examine them by poll, and if in truth they are not agreed, they are fineable. 29 Assiz. 27. 40 Assiz. 10.
>
> "If the jurors by mistake or partiality give their verdict in court, yet they may rectify their verdict before it is recorded, or by advice of the court go together again and consider better of it, and alter what they have delivered.  Plow. Com. 211. b. Saunder's case.
>
> "But if the verdict be recorded, they cannot retract nor alter it."

An additional advantage to polling is the likelihood that it will discourage post-trial efforts to challenge the verdict on allegations of coercion on the part of some of the jurors.  See Audette v. Isaksen Fishing Corp., 789 F.2d 956, 961 n.6 (1st Cir. 1986).

We have acknowledged the importance of the right to poll the jury, see Government of Virgin Islands v. Hercules, 875 F.2d 414, 418 (3d Cir. 1989), United States v. Grosso, 358 F.2d 154, 160 (3d Cir. 1966), rev'd on other grounds, 390 U.S. 62 (1968), but have not prescribed a specific method of doing so. In Hercules, we held that a district court erred in refusing to take a poll and by relying instead upon the fact that all of the jurors had signed the verdict slip as an indication of agreement. However, we acknowledged that the prevailing view is that the method chosen is within the discretion of the trial judge. Hercules, 875 F.2d at 418; United States v. Aimone, 715 F.2d 822, 832-33 (3d Cir. 1983); see also United States v. Sturman, 49 F.3d 1275, 1282 (7th Cir. 1995); Audette, 789 F.2d at 959; United States v. O'Bryant, 775 F.2d 1528, 1535 (11th Cir. 1985); United States v. Carter, 772 F.2d 66, 67 (4th Cir. 1985); United States v. Mangieri, 694 F.2d 1270, 1282 (D.C. Cir. 1982); accord 3 Charles A. Wright, Federal Practice & Procedure § 517, at 33 (2d ed. 1982 & Supp. 1995); 8A James W. Moore, Moore's Federal Practice ¶ 31.07, at 31-67 (2d ed. 1995).

The general rule of discretion has been applied in a variety of circumstances. It has been cited when the question was whether the poll should be taken on each count of an indictment or as to each of several defendants; whether polling should continue after a juror expressed some misgivings about the verdict; and whether re-polling should be allowed. These variations differ, however, from the individual versus collective issue.

A number of courts have concluded that in the particular circumstances presented, a collective poll was permissible.  United States v. Hiland, 909 F.2d 1114, 1139 n.42 (8th Cir. 1990); Posey v. United States, 416 F.2d 545, 554 (5th Cir. 1969);  Turner v. Kelly, 262 F.2d 207, 211 (4th Cir. 1958); see Carter, 772 F.2d at 68 (showing of hands).  Nevertheless, the preference of the appellate courts, and most district courts, has been for an individual jury poll.

In Carter, 772 F.2d at 68, the Court "strongly" suggested individual polling, stating:  "We find that such a procedure best fulfills the purpose of a jury poll."  In Turner, 262 F.2d at 211, the Court remarked, "[I]ndividual questioning would appear to be consonant with the etymological derivation of the term, and with the apparent trend of authority."  See also Audette, 789 F.2d at 960; Shepherd, 576 F.2d at 722 n.1; United States v. Sexton, 456 F.2d 961, 967 (5th Cir. 1972) ("correct" procedure is to poll individual jurors).

A respected treatise likewise agrees that individual polling is preferable.  In IV Charles E. Torcia, Wharton's Criminal Procedure § 586, at 152 (12th ed. 1976), the author says:  "There is usually no prescribed mode of polling the jury.  Any clear and concise form of inquiry is sufficient.  The question put to each juror may be simply, `Is this your verdict?'"  (emphasis added and footnotes omitted).

In Hercules, 875 F.2d at 419 n.8, we noted that the ABA Standards Relating to Trial by Jury called for polling each juror individually, and we agreed "that this method is the most

desirable."  The ABA Standards for Criminal Justice § 15-4.5 provide that the "poll shall be conducted by the court or clerk of court asking each juror individually whether the verdict announced is his or her verdict."  The commentary to that standard reads:  "The jurors are to be questioned individually, which is what is generally understood to be contemplated by the right to have the jury polled."  Although conceding that, in some jurisdictions, a collective inquiry is sufficient, the commentary warns that "[t]his procedure is not permitted under the standard, for it saves very little time while creating a risk that a juror who has been coerced to go along with the majority will not speak up."

Although our preferred method under <u>Hercules</u> has been individual polling, we are bound by our precedent to review the procedure followed in the case before us as one that is within the discretion of the district court.  As such, we look to the record to determine whether the collective method chosen by the trial judge here failed to provide a realistic opportunity for a potential dissenting juror to reveal his or her opposition before the verdict was recorded.

In this connection, it is significant that before the verdict was announced, the district judge told the jurors that they should listen attentively because they would soon be asked as a group whether they agreed with the verdict as announced by the foreperson.  As noted earlier, after responding collectively in the affirmative to the clerk's inquiry, "So say you all?," the

jurors were then asked by the judge, "Does anyone say `not guilty.'"  No juror responded to that question.

When that proceeding is considered against the backdrop of a relatively simple case, a short period of deliberation by the jury, and no indication in the record that any of the jurors displayed reluctance or disagreement with the verdict, we cannot say that the district court abused its discretion.  Accordingly, in this instance, we conclude that the collective poll did not constitute reversible error.

However, we are concerned that in other circumstances collective polling may not have the desired effect and may lead to unnecessary challenges to the finality of jury verdicts. Although we have previously expressed our strong preference for individual juror inquiries (the practice that apparently is generally followed in the district courts), uniformity has not been achieved.  Accordingly, we consider it necessary to adopt a supervisory rule for the district courts within this circuit.

In the future, whenever a party timely requests that the jury be polled, the procedure shall be conducted by inquiry of each juror individually, rather than collectively. Recognizing that circumstances in each case may vary widely, we leave to the discretion of the district courts -- keeping in mind the purposes of the polling rule -- whether a separate inquiry should be conducted for each count of an indictment or complaint, for each of a number of defendants, or for a variety of issues.

II.

Before the trial began, the district court conducted a hearing on the government's motion in limine to bar the defendant from producing evidence of alleged duress.[1]  Defendant testified to a history of physical and psychological abuse by her husband, George Salemo.  In addition, she asserted that he had threatened her, her brother, and her mother.  Because Salemo had purported ties with organized crime, she believed that he had the ability to carry out his threats, even while incarcerated.

Defendant testified that she signed the checks and sold the car at Salemo's direction, as a result of his threats to injure her.  She did not complain to the police, fearing it would be ineffectual because of Salemo's work for the Pennsylvania Crime Commission.

A witness who had previously served with the Crime Commission testified that prior to the check-kiting scheme, Salemo had been an informant for the Commission and had been released from prison in return for his cooperation.  However, the arrest in Florida in 1991 was at the instigation of the Crime Commission.

The district court refused to allow the evidence of duress to be introduced.  Ruling from the bench, the district

---

[1].  A court may rule pretrial on a motion to preclude a defendant from presenting a duress defense where the government contends that the evidence in support of that position would be legally insufficient.  E.g., United States v. Sarno, 24 F.3d 618, 621 (4th Cir. 1994); United States v. Villegas, 899 F.2d 1324, 1343 (2d Cir. 1990).

judge found that because Salemo was in prison in another part of the country, there was no immediate threat of death or serious injury, no evidence of immediate retaliation tied to the sale of the car, nor a lack of reasonable opportunity to escape the threatened harm. Moreover, the court concluded that defendant produced no legally significant evidence that she lacked the opportunity to contact law enforcement officers.

As the Supreme Court observed in United States v. Bailey, 444 U.S. 394, 409 (1980), at common law, duress excused criminal conduct when the actor was "under an unlawful threat of imminent death or serious bodily injury." The defense is not often successful. "[I]f there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense[] will fail." Id. at 410 (internal quotation omitted).

In United States v. One 107.9 Acre Parcel of Land Located in Warren Township, Bradford County, Pa., 898 F.2d 396, 399 (3d Cir. 1990), we determined that "[i]n a criminal law context, . . . duress contains three elements:

> (1) an immediate threat of death or serious bodily injury;
>
> (2) a well-grounded fear that the threat will be carried out; and,
>
> (3) no reasonable opportunity to escape the threatened harm."

See also United States v. Santos, 932 F.2d 244, 249 (3d Cir. 1991). To the same effect, see United States v. Paolello, 951

F.2d 537, 541 (3d Cir. 1991), which added an additional factor --
that a defendant should not recklessly place herself in a
situation in which she would be forced to engage in criminal
conduct.

Our review of the record persuades us that the factors
of time and distance are fatal to the defendant's claim of
duress.  Her husband was in jail, many miles removed, when he
threatened to kill her and her family.  Shortly thereafter,
defendant talked to an FBI agent and to a representative of the
Crime Commission, but to neither did she disclose the threats.

There was ample opportunity for defendant to
communicate her claims of duress to law enforcement officials.
She thus failed in her obligation to notify the authorities
rather than to violate a criminal law.  The district court did
not err in barring the defense of duress.

### III.

Defendant further contends that the government acted
improperly in calling Debra Moser, the defendant's housekeeper,
to testify.  Defendant argues that because the prosecution had
impeached that witness in the earlier trial of George Salemo, it
should not take an inconsistent position at her trial.

In 1992, Moser told Thomas Fry, an FBI agent, that she
knew nothing about how the car was moved from the defendant's
garage and out of the Allentown area.  However, during Salemo's
trial in October 1993, Moser, called as a witness by the defense,
admitted that she had moved the car out of the garage and had

hidden it. The government then impeached the witness with the statement she had given to agent Fry.

During the defendant's trial, Moser testified -- this time on behalf of the government -- to the same version of events that she had given in Salemo's case. She said that defendant had instructed her to move the car from the garage. Although at odds with the statement previously given to the FBI agent, the testimony of the witness at both trials was consistent.

Relying on Mesarosh v. United States, 352 U.S. 1 (1956), defendant contends that the government's use of Moser to support its case poisoned the trial. The circumstances presently before us, however, are a far cry from Mesarosh where the government conceded after the trial in that case that it had substantial doubts about the credibility of its principal witness, a paid informant. Here, by contrast, there is no allegation that Moser committed perjury. Her testimony under oath at the Salemo trial differed from the unsworn statement that she had given to the FBI agent, but it does not follow that the government could not believe that her in-court version was the truthful one.

Moreover, unlike Mesarosh, the government made its FBI statement available during the defendant's trial so that she was free to use it on cross-examination. As the Court of Appeals for the Eighth Circuit said in a somewhat similar situation, "Here, the poison of perjury by [the witness] . . . was admitted at trial and the antidote of cross-examination was available and

used by the defendant."  United States v. Wiebold, 507 F.2d 932, 935 (8th Cir. 1974).

In United States v. Hozian, 622 F.2d 439, 442 (9th Cir. 1980), the Court found no impropriety in the government's use of a witness whom it had sought to impeach in a previous trial.  The Court pointed out that the defendant had ample opportunity to develop the matter on cross-examination.  To the same effect, see United States v. Tamez, 941 F.2d 770, 776 (9th Cir. 1991); United States v. Cervantes, 542 F.2d 773, 776 (9th Cir. 1976).

We are persuaded that the district court did not err in permitting Moser to testify.


IV.

The defendant's final point is that the district court erred in refusing to depart downward after being advised of her claims of duress, ill health, and diminished capacity.  The record demonstrates that the district court was aware of its power to depart downward, but in the exercise of discretion,

chose not to do so.  In such circumstances, we do not have appellate jurisdiction over this issue.  <u>United States v. Denardi</u>, 892 F.2d 269, 272 (3d Cir. 1989).

Accordingly, the judgment of the district court will be affirmed.