Linda P. HORNE, Executrix of the Estate of Benny Gerald Horne, Plaintiff–Appellant,

and

Benny Gerald Horne, Plaintiff,

v.

OWENS–CORNING FIBERGLAS CORPORATION, a Delaware Corporation, Defendant–Appellee,

and

AC & S, Incorporated, a Pennsylvania Corporation; Amchem Products, Incorporated; the Celotex Corporation, Individually and as Successor Manufacturing Company, Philip Carey Corporation, Panacon Corporation, Glen Alden Corporation, Rapid American Corporation, Briggs Manufacturing Company, and Smith and Kanzler, a Delaware Corporation; C.E. Thurston & Sons, a Virginia Corporation; Combustion Engineering, Incorporated; Crown Cork & Seal Company, Incorporated, Individually and as Successor in Interest to Mundet Cork Corporation, a New York Corporation; Eagle–Picher Industries, Incorporated, an Ohio Corporation; Flintkote Company, a Massachusetts Corporation; Fireboard Corporation, Pabco Industrial Products Division, a Delaware Corpora-

tion; GAF Corporation, a Delaware Corporation; W.R. Grace & Company, a Connecticut Corporation; A.P. Greene Refractories Company; Keene Corporation, Individually and as Successor in Interest to Keene Building Products Corporation, Keene Insulation Products Corporation, Ehret–Magnesia Manufacturing Company, Baldwin–Ehret–Hill, Incorporated, Baldwin–Hill Company, and Mundet Cork Corporation, a New York Corporation; National Gypsum Company, a Delaware Corporation; Owens–Illinois, Incorporated, an Ohio Corporation; Pittsburgh–Corning Corporation, Individually and as Successor in Interest to Union Asbestos and Rubber Company (UNARCO), a Pennsylvania Corporation; H.K. Porter Company, Incorporated, Individually and as Successor in Interest to Southern Asbestos, Carolina Asbestos, Thermoid and Tullman–McCluskey, a Delaware Corporation; Raymark Industries, Incorporated, Successor in Interest to Raybestos–Manhattan, Incorporated; Rock Wool Manufacturing Company, Incorporated, an Alabama Corporation; Turner & Newall, P.L.C., Individually and as alter ego of Keasby & Mattison; United States Gypsum Company, Inc.; Armstrong World Industries, Incorporated, formerly known as Armstrong Cork Company, a Pennsylvania Corporation, Defendants.

GENERAL REFRACTORIES/GREFCO, INCORPORATED, U.S. REFRACTORIES DIVISION, Defendant and Third Party Plaintiff,

v.

MANVILLE CORPORATION ASBESTOS DISEASE COMPENSATION FUND, Third Party Defendant.

No. 92–2220.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1993.

Decided Aug. 25, 1993.

John Alan Jones, Michaels & Jones Law Offices, P.A., Raleigh, NC, argued, for plaintiff-appellant.

Raymond Harry Modesitt, Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, Terre Haute, IN, Alexander McMillan Bullock, Haynsworth, Marion, McKay & Guerard, Greenville, SC, argued (James B. Pressly, Jr., Haynsworth, Marion, McKay & Guerard, Greenville, SC, on brief), for defendant-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

## OPINION

ERVIN, Chief Judge:

Linda P. Horne, together with her husband Benny Gerald Horne, initiated this products liability action against Owens–Corning Fiberglas Corporation ("Owens–Corning") and numerous other asbestos manufacturers,[1] alleging that Benny Horne's exposure to insulation manufactured by Owens–

---

1. Prior to trial, all defendants other than Owens–Corning settled with the Hornes and were dismissed from the action.

Corning and containing asbestos caused him to contract lung cancer. After Benny Horne's death, Linda Horne ("Horne") proceeded with the action as executrix of his estate. At the close of the trial, the jury returned a verdict form finding Owens–Corning negligent, Benny Horne contributorily negligent, and Owens–Corning not willfully and wantonly negligent. Based on these findings, Horne could not recover. Horne now appeals the district court's admission of various pieces of evidence and the format of the jury verdict form. After reviewing these issues, we find Horne's appeal to be without merit and, accordingly, affirm.

### I

Benny Gerald Horne ("the decedent") began work as an itinerant insulator in 1956 and continued in that line of work until 1969, with a two-year hiatus while serving in the armed forces. Over this thirteen-year period, the decedent was exposed to asbestos-containing insulation products. Horne alleges that much of the decedent's exposure was to an insulation product called Kaylo. The decedent was exposed to asbestos again in 1976 while working at Camp Lejeune, North Carolina. This exposure occurred when the decedent came into contact with asbestos insulation products that were being removed from various pipes and boiler equipment in his work area.

In addition to the decedent's asbestos exposure, testimony showed that the decedent smoked up to two packs of cigarettes a day from 1952 until 1988, when he was diagnosed with lung cancer. The decedent was familiar with research conducted by Dr. Irving Selikoff and distributed by the decedent's union, the International Heat and Frost Insulators, in the late 1960s detailing an increased risk of lung cancer for persons who smoke and are exposed to asbestos. The decedent also was aware of the Surgeon General's warn-

ings on cigarette packages beginning in the early 1960s explaining the general health hazards cigarette smoking posed. Despite the knowledge of these risks, the decedent continued to smoke until diagnosed with lung cancer.

Owens–Corning was founded in 1938 to manufacture various types of insulation products for commercial and residential applications. In 1953 Owens–Corning entered into an agreement with Owens–Illinois, Inc. to distribute Kaylo, an Owens–Illinois asbestos-containing pipe covering and block product. In 1958 Owens–Corning purchased outright the Kaylo division from Owens–Illinois. In 1966 Owens–Corning began labeling its asbestos-based products, cautioning users of the products to avoid breathing asbestos dust. Owens–Corning continued to manufacture and distribute Kaylo until 1972, when it ceased all sales due to the hazards associated with exposure to asbestos.

In the district court, this matter was tried to a jury. The jury returned its verdict on a verdict form, answering "yes" to the following three questions: "Was the defendant Owens–Corning Fiberglass [sic] Corporation negligent?"; "Was the defendant's negligence a proximate cause of the decedent's injury?"; and "Did the plaintiff, by his own negligence, contribute to his injury or damage?" When asked, "Was the negligence of Owens–Corning Fiberglass [sic] Corporation willful or wanton?", the jury responded, "No." Under applicable North Carolina law,[2] the jury's answers on the verdict form precluded recovery by Horne.

Believing that the admission of various pieces of allegedly inadmissible evidence together with a faulty verdict form gave rise to this unfavorable result, Horne argues that the district court abused its discretion by: (1) admitting Owens–Corning's state-of-the-art evidence to show the context of its actions as to Horne's claims of negligence; (2) admit-

**2.** Subject-matter jurisdiction in this case is premised on diversity of the parties, Horne being an executrix properly appointed and empowered to pursue the claims of a deceased resident of North Carolina, *see* N.C.Gen.Stat. § 28A–13–1, – 3(a)(15) (1992 & Supp.1992), and Owens–Corning being a company duly incorporated in Delaware and maintaining its principal place of busi-

ness in Ohio. 28 U.S.C. § 1332(a)(1), (c)(1) & (2). In this diversity action, North Carolina law controls, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), because the decedent's exposure to asbestos occurred in North Carolina. *See Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988).

ting the deposition testimony of an unavailable witness under Rule 804(b)(1) of the Federal Rules of Evidence; (3) admitting various other documents as properly authenticated and not in violation of the hearsay rule; and (4) refusing to include the standard of "gross negligence" on the verdict form as a predicate for compensatory and punitive damages.

## II

■ We review the evidentiary issues raised by Horne for an abuse of discretion. See Garraghty v. Jordan, 830 F.2d 1295, 1298 (4th Cir.1987). Horne suggests that our recent holding in Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332 (4th Cir. 1992), provides for de novo review of evidentiary rulings. Id. at 349. In Sandberg, however, we considered the admissibility of evidence purportedly covered by the attorney-client privilege. Id. Joining sister circuits, we recognized this analysis as a mixed question of law and fact necessitating de novo review. Id. at 349–50. Horne has not raised a similar evidentiary problem; therefore, the issues she advances on appeal merit reversal only if they demonstrate an abuse of discretion.

## A

Horne challenges the admissibility of certain regulations issued in 1972 pursuant to the Occupational Safety and Health Act ("OSHA regulations"). The OSHA regulations established standards for exposure to asbestos dust and mandated methods of compliance with the exposure requirements, including monitoring work sites, compelling medical examinations, and, for the first time, labelling products with warnings. The warning label required was to include language stating, "Caution. Contains asbestos fibers. Avoid creating dust. Breathing asbestos dust may cause serious bodily harm."

Owens–Corning offered the evidence to counter Horne's testimony that Owens–Corn-

ing did not warn its employees of the dangers of working with asbestos. Owens–Corning offered the OSHA regulations for two purposes: to show that the duty to warn was not compelled until 1972 and to show that its warnings, stamped on Kaylo and other asbestos products beginning in 1966, preceded the regulatory requirement to warn and contained more comprehensive warning language. Owens–Corning's labels stated,

This product contains asbestos fiber. If dust is created when this product is used, avoid breathing the dust. If adequate ventilation control is not possible, wear a respirator approved by U.S. Bureau of Mines.

Horne objected to the introduction of the OSHA regulations because she claimed they represented impermissible state-of-the-art evidence. Horne contends that, in a products liability suit, evidence as to the available state of the art should be limited to the time of the alleged product defect.[3] Horne suggests that the relevant time period is the years in which the decedent worked with Kaylo, or 1956 to 1962 and 1965 to 1969; therefore, the 1972 OSHA regulations should not be admitted.

■ We first must determine whether North Carolina accepts state-of-the-art testimony in products liability cases to show the standard of care applicable. Because state-of-the-art evidence helps shape the duty owed by the alleged tortfeasor, its admissibility is not purely an evidentiary matter. Therefore, we must insure not only that the Federal Rules of Evidence permit, but also that North Carolina law would allow, such testimony to establish a duty in an action alleging products liability. The North Carolina Court of Appeals had indicated that such evidence is admissible. See, e.g., Rowan County Bd. of Educ. v. United States Gypsum Co., 103 N.C.App. 288, 308, 407 S.E.2d 860, 871 (1991), disc. rev. denied,[4] 332 N.C. 1, 418 S.E.2d 648 (1992).

3. In this case, the alleged product defect was Owens–Corning's failure to warn the decedent adequately of the hazards associated with working with asbestos.

4. The Supreme Court concluded that review of this issue had been granted improvidently and

declined to discuss it, giving the effect of denying discretionary review altogether. Rowan County Bd. of Educ. v. United States Gypsum Co., 332 N.C. 1, 23, 418 S.E.2d 648, 662 (1992).

State of the art represents
all of the available knowledge on a subject at a given time, and this includes scientific, medical, engineering, and any other knowledge that may be available. State of the art includes the element of time: What is known and when was this knowledge available.

*Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1164 (4th Cir.1986). The need to maintain a sensitivity to the element of time recognized in *Lohrmann* does not foreclose the introduction of state-of-the-art evidence that postdates the events in question. In addition, as a complement to state-of-the-art evidence, industry standards [5] may be introduced. Industry standards outline

the practices common to a given industry. They are often set forth in some type of code, such as a building code or electrical code, or they may be adopted by the trade organization of a given industry.

*Id.*

■ In this case the district court properly admitted the OSHA regulations for two reasons. First, if viewed as state-of-the-art evidence, the regulations were relevant, *see* Fed.R.Evid. 402, 403, although promulgated after the decedent's alleged exposure to Kaylo. Owens–Corning introduced the OSHA regulations to establish that it was manufacturing and labelling asbestos-containing products under its own safety guidelines well before the OSHA-mandated guidelines became effective. In addition, Owens–Corning's guidelines outlined a more detailed label than that called for by the OSHA regulations.

■ Had Owens–Corning sought to introduce regulations post-dating the relevant conduct to establish the impossibility of something deemed possible at the time of the relevant conduct, it would have been engaging in an inappropriate use of state-of-the-art evidence. State-of-the-art evidence, because it often is scientific in nature and results from a cumulative review of a field over time, should not be applied retroactively to *discredit* conduct at a given time prior to the culmination of the relevant research. Instead, Owens–Corning was using subsequent findings and standards to *credit* prior conduct. This use of state-of-the-art evidence does not represent an abuse of discretion.

■ The evidence is admissible for a second reason. When viewed as an industry standard rather than state of the art, the OSHA regulations are admissible with less concern for the time frame of their promulgation. The safety requirements found in the OSHA regulations seem more analogous to building codes and other industry-specific safety guidelines than to technical or scientific developments representing the cutting edge of asbestos handling.

Accepting the OSHA regulations as close cousins to building codes and therefore more like industry standards, we find that our decision in *Stonehocker v. General Motors Corp.*, 587 F.2d 151 (4th Cir.1978) controls the outcome on this point. In *Stonehocker* we faced the issue whether to admit federal regulations post-dating the relevant conduct as evidence of the defendant's due care at the time of the alleged tortious acts. We held:

There are many reasons why, if the vehicle manufactured in 1967 did not comply with a regulation later promulgated, as here finally in 1973, that the fact of noncompliance might be inadmissible. In the first place, the time frame of the standard of care must be 1967, not 1973. Further, perfectly valid policy reasons may dictate that such regulations not be made retroactive, and it is well known that retroactive application of statutes in general is not favored. No reason seems apparent to distinguish regulations.

But here General Motors takes the position that in 1967 it, ahead of its time, manufactured a vehicle which complied with safety requirements promulgated from 1971 through 1973. Conceding, as we must, that the statute, 15 U.S.C.

---

**5.** North Carolina appellate courts have approved of the use of industry standards in products liability cases. *See, e.g., Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 302, 354 S.E.2d 495, 498 (1987); *Smith v. Selco Prods., Inc.*, 96 N.C.App. 151, 160, 385 S.E.2d 173, 177–78 (1989), *disc. rev. denied*, 326 N.C. 598, 393 S.E.2d 883 (1990).

§ 1397(c),[6] would prevent evidence of compliance with the standard from exempting General Motors from negligence for a vehicle subject to the terms of the regulation, nevertheless we believe that a compliance with the standard should have been admitted into evidence as evidence of due care in the design of the vehicle to be considered by the jury with the other evidence in the case.

*Id.* at 156–57. The *Stonehocker* court admitted the 1973 vehicle safety regulations as industry standards evidencing General Motors' due care.

Like General Motors in the *Stonehocker* case, Owens–Corning sought to introduce the OSHA regulations as evidence of its due care. By treating the regulations as industry standards, we would be hard pressed to find an abuse of district court discretion under the precedent of *Stonehocker.* Under either the state-of-the-art or the industry standard analysis, therefore, the evidence was properly admitted.

### B

Owens–Corning introduced, and the district court admitted, portions of the February 11, 1981, and March 27, 1981 depositions of Mr. W.G. Hazard, a former industrial hygienist for the Owens–Illinois Company, Owens–Corning's predecessor in ownership of Kaylo. The district court admitted the Hazard depositions pursuant to Rule 804(b)(1) of the Federal Rules of Evidence. Rule 804(b)(1) provides:

> (b) **Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) **Former testimony.** Testimony given as a witness ... in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804(b)(1). The Notes of the Advisory Committee following the rule raise the question "whether strict identity, or privity, should continue as a requirement with respect to the party against whom offered." *Id.* advisory committee notes. The notes suggest that "[t]he rule departs to the extent of allowing substitution of one with the right and opportunity to develop the testimony with similar motive and interest." *Id.*

■ When reviewing the admissibility of evidence pursuant to Rule 804(b)(1), we have focused on the similarity of motives between the predecessor in interest and the one against whom the deposition is now offered to determine the scope of Rule 804(b)(1). In a situation in which the motives differ, the testimony may not be introduced. Our decision in *Lohrmann v. Pittsburgh Corning Corp.* demonstrates this limit to admissibility. *See Lohrmann,* 782 F.2d at 1160–61. In *Lohrmann* the prior action from which the deposition derived involved claims based on the hazardous effects upon the health of plant workers exposed to raw asbestos. *Id.* at 1161. The *Lohrmann* plaintiff sought to introduce the deposition against Pittsburgh Corning Corp., a manufacturer of asbestos not involved in the earlier litigation. *Id.* at 1160. The *Lohrmann* plaintiff was not a plant worker, but a pipefitter, who from time to time worked in close proximity to insulators and others using products containing processed asbestos. *Id.* at 1161. Cross-examination in the deposition would not have brought out the distinction between employees exposed to raw asbestos and those exposed to asbestos by-products and dust. *Id.* Therefore, we affirmed the district court's determination that the deposition did not present a similar opportunity and motive to develop testimony and should not be admitted against Pittsburgh Corning Corp. in the subsequent litigation. *Id.*

Horne challenges the admission of the Hazard depositions on two grounds. First, she claims that the court failed to determine the witness's unavailability. Second, she

---

**6.** Section 1397(c) of the Federal Motor Vehicle Safety Standards Act provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." 15 U.S.C. § 1397(c).

claims that the participants in the deposition did not share similar motives to develop testimony as she, preventing the testimony from being introduced against her now.

In this case the district court made the following findings regarding witness availability:

THE COURT: Is he dead now?

MR. MODESITT: I am under the belief that he is dead. He is unavailable at any rate, but I think he's dead.

THE COURT: How do you know he is unavailable? Well, I will be here about 8:15 and we will take this and anything else up that you have at that time.

RECESS.

Upon resuming proceedings the next day, neither party nor the court revisited the availability issue, and Horne did not renew her objection. Despite the absence of a finding as to availability, we see no merit in Horne's challenge on this basis. The record indicates that Owens–Corning represented that Hazard was dead, and Horne did not,[7] nor does she now, contest that fact. Without some evidence of Hazard's availability, we cannot conclude that the district court's failure to make findings specifically as to unavailability represents an abuse of discretion. The court's admission of the Hazard deposition pursuant to Rule 804(b)(1) implicitly incorporates a finding of unavailability absent the introduction of evidence to the contrary.[8]

As a second ground for challenging the Hazard depositions, Horne suggests that the claimants in the other asbestos litigation for which Hazard gave his depositions were not predecessors in interest to Horne.

Horne's contention is based on a misapprehension of the law, not on valid distinctions between the litigants. Rather than pointing to factual and legal differences in the proceedings, such as those detailed in *Lohrmann*, Horne contends that the other claimants are not predecessors in interest because they have no relationship to Horne. Horne's argument relies on the need for some showing of privity. The *Lohrmann* holding makes clear that privity is not the gravamen of the analysis. Instead, the party against whom the deposition is offered must point up distinctions in her case not evident in the earlier litigation that would preclude similar motives of witness examination. Horne offers no such distinctions; therefore, the district court's introduction of the deposition excerpts does not represent an abuse of discretion.

C

Horne raises several miscellaneous objections to the introduction of six documents—a United States Treasury Department Publication introduced under Federal Rules of Evidence 803(6) and (8) as business and public records; a 1955 American Medical Association article introduced under Federal Rule of Evidence 803(6) as a business record; interoffice memoranda from Owens–Corning files dated December 9, 1952, April 22, 1964, and October 26, 1964, introduced under Federal Rules of Evidence 803(16) and 901(b)(8) as ancient documents; and excerpts from National Insulation Manufacturers Association brochures, also introduced under Federal

---

**7.** Indeed, at trial Horne objected to the admission of the Hazard depositions on two grounds unrelated to availability: (1) the existence of a court order from a prior proceeding in West Virginia prohibiting the deposition of Hazard unless Horne's attorneys were first accorded the opportunity to depose Hazard; and (2) the absence of Horne or her attorneys from the Hazard depositions. The district court ruled the West Virginia court order inapplicable because it bound a different jurisdiction and pertained to a different lawsuit in which Horne was not involved. Horne's absence at the depositions is discussed *infra* in the context of whether Horne was represented by a predecessor in interest.

**8.** To support her argument, Horne relies on the Tenth Circuit Court of Appeals' decision in *O'Banion v. Owens–Corning Fiberglas Corp.*, 968 F.2d 1011, 1014–15 (10th Cir.1992). The *O'Banion* court did hold that "the [district] court abused its discretion in admitting this former testimony into evidence under Rule 804(b)(1) without a finding of unavailability." *Id.* at 1014. We distinguish *O'Banion* on the basis that "[n]owhere in [its] record [did] there appear to be consideration of the unavailability of the declarant expert witness." *Id.* In this case, unavailability was asserted and remains uncontroverted; therefore, the district court had a basis on which to conclude that the depositions were admissible under Rule 804(b)(1).

Rules of Evidence 803(16) and 901(b)(8) as ancient documents.

We find that her challenges to mechanical compliance with hearsay exceptions and authentication requirements are without merit. The district court carefully reviewed each piece of evidence to establish its conformity with the appropriate rules of evidence before admitting the document. Each document was excepted from the hearsay rule and authenticated in a fashion that surmounts challenge as an abuse of discretion.

### III

■ Horne's final contention is that the district court erred by not including an inquiry about Owens–Corning's gross negligence on the verdict form. The form asked the jury to determine the negligence of Owens–Corning and then to answer whether that negligence was the proximate cause of the decedent's injuries. Upon answering both of these questions in the affirmative, the jury was asked whether the decedent's own negligence contributed to his injury. The jury found contributory negligence; therefore, the form asked the jury whether the negligence of Owens–Corning was willful or wanton, thus negating the decedent's contributory negligence and permitting a recovery.[9] The jury answered this question "No." Horne claims that the jury should have been given the opportunity to determine whether Owens–Corning had been grossly negligent, arguing that gross negligence requires a lesser showing than willful and wanton conduct.

In *Klein v. Sears Roebuck & Co.*, 773 F.2d 1421 (4th Cir.1985), we laid out a standard for reviewing verdict forms and jury charges. In *Klein*, Sears argued that the verdict form used by the district court erroneously omitted the element of proximate cause and that this error was compounded by the court's

inadequate jury instructions on the issue. *Id.* at 1426. We stated:

> It is settled in this jurisdiction that the formulation of issues and the form of interrogatories is committed to the sound discretion of the trial judge. In considering the adequacy of the verdict form, we consider several factors, including whether the interrogatories adequately presented the contested issues to the jury when read as a whole and in conjunction with the general charge, whether submission of the issues to the jury was fair, and whether the ultimate questions of fact were clearly submitted to the jury.

*Id.* at 1426–27 (citations omitted). We then held that the instructions given by the district court were sufficient to apprise the jury of the need for a finding of proximate cause. *Id.* at 1427.

The district court's decision to omit "gross negligence" from the verdict form in this case will not represent an abuse of discretion if, when viewed in the context of controlling North Carolina law, the verdict form and charge to the jury adequately informed the jury of the issues before it. North Carolina has construed "gross negligence" as requiring conduct the same as that needed for a showing of willful and wanton conduct,[10] *e.g., Sorrells v. M.Y.B. Hospitality Ventures*, 105 N.C.App. 705, 707, 414 S.E.2d 372, 373–74, *rev'd on other* grounds, 332 N.C. 645, 423 S.E.2d 72 (1992), and something *less* than that needed for proof of willful and wanton conduct, *e.g., Cole v. Duke Power Co.*, 81 N.C.App. 213, 218, 344 S.E.2d 130, 133, *disc. rev. denied*, 318 N.C. 281, 347 S.E.2d 462 (1986); *Beck v. Carolina Power & Light Co.*, 57 N.C.App. 373, 384, 291 S.E.2d 897, 903–04, *aff'd*, 307 N.C. 267, 297 S.E.2d 397 (1982).

■ Cases recognizing "gross negligence" as something less than willful and

---

9. In North Carolina a defendant's gross negligence or willful and wanton conduct will enable the plaintiff to recover despite the plaintiff's own contributory negligence. *See, e.g., Sorrells v. M.Y.B.·Hospitality Ventures*, 105 N.C.App. 705, 606, 414 S.E.2d 372, 373–74, *rev'd on other grounds*, 332 N.C. 645, 423 S.E.2d 72 (1992); *Wilson v. Bellamy*, 105 N.C.App. 446, 469, 414 S.E.2d 347, 360, *disc. rev. denied*, 331 N.C. 558, 418 S.E.2d 668 (1992).

10. In a 1956 opinion, the Supreme Court of North Carolina stated that "[a]n analysis of our decisions impels the conclusion that this Court, in references to gross negligence, has used the term *in the sense of wanton conduct.*" *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E.2d 393, 396 (1956).

wanton conduct are limited to two situations. First, courts have so construed section 28A–18–2(b)(5) of the North Carolina Wrongful Death Act, which states that

> [d]amages recoverable for death by wrongful act include: .... [s]uch punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful [sic] or wanton injury, or gross negligence....

N.C.Gen.Stat. § 28A–18–2(b)(5) (Supp.1992); *see, e.g., Cole*, 81 N.C.App. at 218, 344 S.E.2d at 133 ("To treat the G.S. 28A–18–2(b)(5) phrases 'wilful [sic] or wanton injury' and 'gross negligence' as synonymous ... effectively renders one or the other mere surplusage, contrary to the ... foregoing rule of construction.") (internal quotation marks and alterations omitted). Second, the North Carolina appellate courts have recognized this distinction in bailment cases. When a bailment is gratuitous, the bailee is held liable only for gross negligence, being something less than willful and wanton conduct. *See Clott v. Greyhound Lines, Inc.*, 9 N.C.App. 604, 609, 177 S.E.2d 438, 441 (1970), *rev'd on other grounds*, 278 N.C. 378, 180 S.E.2d 102 (1971).

Neither the North Carolina Wrongful Death Act nor the laws of bailment apply in this case. Therefore, the North Carolina courts' general equation of gross negligence and willful and wanton conduct in their discussion of common-law torts is applicable. In addition, the district court thoroughly and carefully instructed the jury of the possibility that gross negligence or willful and wanton conduct could provide Horne with the opportunity for recovery, as follows:

> If the plaintiff's negligence, Mr. Horne's negligence, was a proximate cause of and therefore contributed to his own personal injury, he could not recover unless Owens–Corning Fiberglas' own negligence was willful or wanton.

....

> Ordinarily, such an answer on the contributory negligence issue, i.e., one who is ordinarily contributorily negligent, that would be a complete defense.

> However, there is an exception to this co-called contributory negligence defense and it is called gross negligence, and that is what Paragraph B. of the second issue is about.

> Gross negligence occurs when the defendant's conduct goes beyond ordinary negligence and demonstrates conscious or reckless disregard for the rights and safety of others.

....

> The test for negligence and contributory negligence, which I have defined and explained for you previously in connection with the first issue, is not the same test you will apply when considering Paragraph B. test of negligence, that is, willful and wanton or gross negligence.

....

> Gross negligence occurs when the defendant acts with conscious or reckless disregard for the rights and safety of others.

This charge fairly details North Carolina's definitions of gross negligence[11] and willful and wanton conduct.[12] If anything, the district court's charge favors the definition of gross negligence. Because Horne received a charge indicating more than once that Owens–Corning's gross negligence could entitle her to a recovery, the absence of the words "gross negligence" from the jury verdict form is inconsequential. The jury was instructed in a manner sufficient to withstand reversal under the standard formulated in *Klein v. Sears Roebuck & Co.*, 773 F.2d at 1426–27. Therefore, we hold that the district court did not abuse its discretion in declining to modify the fourth question on the verdict form to encompass the concept of gross negligence.

---

11. "Gross negligence" is "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988).

12. "Willful and wanton negligence" involves the act of one who knows or reasonably should be expected to know that his conduct will bring harm to another. The actor is recklessly indifferent to the results of his conduct. *See Wagoner v. North Carolina R.R. Co.*, 238 N.C. 162, 168, 77 S.E.2d 701, 706 (1953).

## IV

Because Horne does not challenge the jury's substantive findings of negligence, and because her assignments of error as to the district court's exercises of discretion in the admission of evidence [13] and the content of the verdict form are without merit, we affirm the jury's verdict.

AFFIRMED.

**13.** Horne's evidentiary challenges were limited to the application of the specific rules discussed in this opinion. At no point in her appeal did Horne draw into question the evidence's relevance pursuant to Rules 402 and 403 of the Federal Rules of Evidence. *See* Fed.R.Evid. 402, 403.