**SUPERMARKET OF MARLINTON, INC., Plaintiff,**

v.

**MEADOW GOLD DAIRIES, INC., et al., Defendants.**

Civ. A. No. 93–0968–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Nov. 23, 1994.

Norman W. White, Shaffer & Shaffer, Madison, WV, William C. Buckhold, Fort & Schlefer, Washington, DC, Harrison Darden Hutson, Jr., Hutson & Nuzzo, Arlington, VA, for plaintiff.

Jonathan Martin Rogers, Roanoke, VA, P. Michael Pleska, Charles M. Love, III, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, Karen Baynes, Michael A. Doyle, H. Stephen Harris, Jr., Alston & Bird, Atlanta, GA, Colleen K. Nissl, Columbus, OH, for defendants Meadow Gold Dairies, Inc. and Borden, Inc.

John Thomas Jessee, Michael F. Urbanski, Heman Alexander Marshall, III, Francis H. Casola, Woods, Rogers & Hazlegrove, Roanoke, VA, for defendant Valley Rich Dairy.

William Harrison Cleaveland, Rider, Thomas, Cleaveland, Ferris & Eakin, Roanoke, VA, D. Paul Alagia, Jr., Ronald L. Gaffney, John J. McLaughlin, Alagia, Day, Trautwein & Smith, Louisville, KY, for defendant Flav-O-Rich, Inc.

Michael F. Urbanski, Heman Alexander Marshall, III, Francis H. Casola, Woods, Rogers & Hazlegrove, Roanoke, VA, for defendant the Valley of Virginia Cooperative Milk Producers Ass'n.

## MEMORANDUM OPINION

KISER, Chief Judge.

This case is before me on the defendants' motions for summary judgment. The parties have briefed the issues contained in those motions and the Court has heard oral argument. The motions are, therefore, ripe for disposition. For the reasons stated below, I will grant the defendants' motions on the ground that Paul French's testimony is inadmissible hearsay.

FACTS:

This action arises under the Clayton Act, 15 U.S.C. §§ 15 & 26, and portions of the Virginia and West Virginia Code. The plaintiff, Supermarket of Marlinton, Inc., represents a class of wholesale milk purchasers. It alleges a conspiracy between the defendant dairies, Meadow Gold Dairies, Borden, Valley Rich Dairy, and Flav-O-Rich, to illegally and artificially raise the price of milk supplied to the plaintiff. The conspiracy allegedly took place from the spring of 1984 to 1987.

Prior to the instant action, the United States had prosecuted a criminal action against Borden, Inc., Meadow Gold, and Valley Rich. That action resulted in a guilty plea. Additionally, the United States prosecuted certain employees of Meadow Gold, including James Woods, Edgar Jackson Dobbins, and James Garner. At the trial of the individual employees, a former General Manager of Valley Rich, Paul French, testified for the government. His testimony focused upon price-fixing and bid-rigging activities that French reported he engaged in with the individual defendants. The trial of the individual defendants resulted in a hung jury and the government later dropped all charges. French's testimony at the criminal trial was given under a grant of use immunity.

The plaintiff commenced the instant action after the statute of limitations had run. Recognizing this fact, the plaintiff pled fraudulent concealment in its complaint so as to toll the statute of limitations. Plaintiff seeks to use the testimony of French as its chief evidence of fraudulent concealment.

DISCUSSION:

### I.

■ Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). Where the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied*, —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). However, for evidence to be properly considered in a summary judgment motion, it must be admissible at trial. F.R.Civ.P. Rule 56(e); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2727, at 156 (1983). Inadmissible evidence fails to establish a genuine issue of material fact. 10A Wright, et al., *supra.*

## II.

◼ To toll the statute of limitations on the basis of fraudulent concealment, the plaintiff must show that "(1) the party pleading the statute fraudulently concealed facts which are the basis of the claim, and that (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir.1987). In an antitrust case such as this one, there is a split of opinion as to what acts will satisfy the first prong of this test.

Three different standards have emerged from the circuits. The most lenient standard is the so-called self-concealing doctrine. Endorsed by the Second Circuit, this standard requires no proof of affirmative concealment because a price-fixing conspiracy is deemed to be self-concealing. *See New York v. Hendrickson Bros. Inc.*, 840 F.2d 1065 (2d Cir. 1987). On the other end of the spectrum, the Tenth Circuit has adopted an approach re-

quiring that the acts of concealment of the conspiracy be "separate and apart" from the acts that constitute the conspiracy itself. *Colorado v. Western Paving Constr. Co.*, 630 F.Supp. 206, 210 (D.Colo.1986), *aff'd by equally divided en banc court*, 841 F.2d 1025 (10th Cir.1988) (withdrawing prior panel opinion), *cert. denied*, 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988). This standard requires "affirmative steps in addition to the original wrongdoing to prevent the plaintiff from discovering the wrong." 630 F.Supp. at 210. Essentially, a post-fraud cover up is required. *Id.*

The intermediate standard compromises these two extremes. Affirmative acts of concealment committed during the course of the underlying conspiracy are sufficient to satisfy the first prong of the fraudulent concealment requirements. The best example of this standard is in the Fifth Circuit case of *Texas v. Allan Constr. Co.*, 851 F.2d 1526 (5th Cir.1988). *See also Pinney Dock & Trans. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1471–72 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The Fourth Circuit has not explicitly adopted any of these three standards. Instead, it merely holds that fraudulent concealment "implies conduct ... affirmatively directed at deflecting litigation...." *Pocahontas*, 828 F.2d at 219.

The plaintiff argues that the intermediate standard should apply. But regardless of which standard the Court eventually adopts, it has evidence of fraudulent concealment that satisfies any of the three standards. The evidence plaintiff primarily relies upon is French's testimony at the criminal trial.[1] It also presents other evidence from the deposition of James Woods and two documents which represent that bids that were submitted were not the result of collusion or bid-rigging.[2] This evidence establishes fraudulent concealment, according to the plaintiff, under any potentially applicable standard.

I disagree. As will be demonstrated below, the French testimony is not admissible. Likewise, the other evidence that the plaintiff

---

**1.** *See* Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at 2.

**2.** *See* Plaintiffs Exh. 12 & 13.

submits is insufficient proof of acts of concealment. Therefore, summary judgment is appropriate on each of the defendants' motions.

### III.

■ The parties agree that the French testimony is hearsay. It is an out-of-court statement offered for the truth of the matter asserted therein. *See* F.R.E. 801(c). Thus, to be admissible, it must fit an exception to the hearsay doctrine. The parties have briefed the three exceptions that could arguably apply: former testimony, F.R.E. 804(b)(1); statement against interest, F.R.E. 804(b)(3); and residual, F.R.E. 804(b)(5).[3]

■ Each of these exceptions requires that the declarant be unavailable. That term is defined in Rule 804(a). Plaintiff's counsel asserted that French was unavailable because he was asserting his Fifth Amendment privilege. This issue was not argued extensively in the briefs or at the oral argument. For purposes of this motion, the unavailability of French will be assumed. I now turn to the application of each of the hearsay exceptions.

### A.

■ The first exception to examine is former testimony. Rule 804(b)(1) provides for the admission of

> [t]estimony given as a witness at another hearing of the same or a different proceeding ... if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

F.R.E. 804(b)(1). Under recent Fourth Circuit precedent, the focus of the inquiry under Rule 804(b)(1) is on the similarity of motives between the predecessor in interest and the one against whom the testimony is now offered. *Horne v. Owens–Corning Fiberglas*

*Corp.,* 4 F.3d 276, 282 (4th Cir.1993). If the motives are different, then the testimony is inadmissible. *Id.* Privity between the prior party and the party against whom the testimony is now offered is not the central inquiry. *Id.* at 283. Instead, the party against whom the testimony is now offered must point up factual and legal distinctions not evident in the earlier litigation that would preclude similar motives of witness examination. *Id.*

■ Particularly because the legal distinctions between the two cases are important, it is necessary to determine what standard for fraudulent concealment the Fourth Circuit would follow. If the self-concealing standard applied, then the motives of the individual defendants in the criminal case and the corporate defendants here would be similar. Both would be interested in proving that the price-fixing conspiracy did not take place. Any testimony regarding *secrecy* of the meetings between French and the defendants would be only incidental to the fact that meetings were held at all. The credibility of French on that exact issue would be in question. However, if the more stringent Tenth Circuit standard applied, then the motives would be different. There was no reason for the prosecution or defense to examine French on the issue of additional efforts to cover up the price-fixing scheme he allegedly participated in.

As noted above, the Fourth Circuit requires acts affirmatively directed at deflecting litigation. *Pocahontas,* 828 F.2d at 219. This standard clearly would exclude the self-concealing test as the controlling rule in this circuit. Requiring an affirmative act is a greater burden than proving the mere existence of the conspiracy. *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 858 F.2d 499, 505 (9th Cir.1988) (holding that affirmative act of denial sufficient to toll statute of limitations), *cert. denied,* 488 U.S. 1010, 109 S.Ct.

---

**3.** Defendant Valley Rich and Flav–O–Rich also argue that the transcript of the hearing is itself inadmissible hearsay. This argument is not well-taken. *See United States v. Brooks,* 966 F.2d 1500, 1505 (D.C.Cir.1992); 4 *Weinstein on Evidence* ¶ 804(b)(1)[01], at 804–87. The case Valley Rich cites is clearly distinguishable for there the proponent of the evidence did not advance any additional exception that would allow the statements contained in the transcript to be admitted. *See Trustees of the Univ. of Pa. v. Lexington Ins. Co.,* 815 F.2d 890, 905 (3d Cir.1987).

795, 102 L.Ed.2d 786 (1989).[4]

The question of whether the acts should be independent of the conspiracy is a more difficult issue. An act affirmatively directed at deflecting litigation implies that a threat of litigation exists. It is generally true that when individuals are engaged in price-fixing activities, there is always the fear that their activities will be discovered and that litigation will follow. But this would make every price-fixing case a subject for application of the standard. Surely, this is not what the Fourth Circuit intended. Instead, *Pocahontas* must mean that the defendant's acts must amount to more than clandestine meetings between the co-conspirators, otherwise the self-concealing standard would suffice. It would seem that the *Pocahontas* "deflecting litigation" standard would refer to situations where the conspirators had some knowledge, or at least a suspicion, that their misdeeds were about to be discovered and took additional steps to cover up their activities. For example, if the defendant acts to deflect litigation by shredding documents or issuing misleading or false press releases,[5] the equitable tolling doctrine comes into play.

The facts of *Pocahontas* bear out this proposition. In that case, the plaintiff alleged a conspiracy to fix the pricing and delivery of coal. The conspiracy was carried out through a network of interlocking directorates. *Pocahontas*, 828 F.2d at 215. Plaintiff alleged that the existence of the interlocking directorates as well as the specific activities undertaken pursuant to the conspiracy were concealed from them. *Id.* at 218. Specifically, the plaintiff claimed that when it inquired of one of the defendants why the price of coal was so low, the defendant blamed it on a railroad strike that affected delivery quotas and the ability of the defendant to store coal. *Id.* This conduct was not enough to constitute acts affirmative-

ly directed at deflecting litigation. *Id.* at 219.

It is clear that the court did not adopt the self-concealing standard. It is not clear, however, whether the court was following the intermediate standard of the Fifth Circuit or the more stringent standard of the Tenth Circuit. Had the court wanted to adopt a rule similar to the intermediate standard it could have proceeded to examine the specific activities undertaken in the conspiracy. The plaintiff had alleged the related "manipulative and deceptive practices", associated with the acts in the conspiracy. To the extent the court did not choose to proceed in this manner, I conclude that the *Pocahontas* court deemed these activities, like the failure to own up to illegal conduct, also insufficient to satisfy their requirement.[6] At the very least, therefore, the *Pocahontas* court did not give the intermediate standard a ringing endorsement.

Moreover, the separate and independent standard of the Tenth Circuit is the better reasoned rule. It is undoubtedly true that any price-fixing conspiracy must remain concealed to be successful. *See Allan Construction*, 851 F.2d at 1530–31 (rejecting self-concealing standard). It follows, therefore, that any price-fixing or bid-rigging conspiracy will involve affirmative acts of concealment. The intermediate standard allows acts concealing wrongful conduct taken in the course of the conspiracy to support a claim of fraudulent concealment. *Id.* at 1534. But if any conspiracy contains acts of concealment, then the fraudulent concealment doctrine is potentially applicable in every conspiracy case. Not only is the intermediate rule difficult to apply, such a result is at odds with congressional intent to impose a four-year time limit on such claims. Statutes of limitation serve the policies of repose and preven-

---

4. Indeed, *Conmar* involved facts that tended to show a cover-up, as the most stringent test would require. In that case, the defendant issued a press release after the government released the affidavit of a customs officer in charge of the investigation. The press release stated that the investigation was based on a misunderstanding and misinterpretation of customs regulations. *Conmar*, 858 F.2d at 505.

5. *See Conmar*, 858 F.2d at 505 (false press release an affirmative act of concealment).

6. Apparently silence or failure to own up to wrongdoing would not satisfy the Fifth Circuit's intermediate standard unless there was an affirmative denial on which the plaintiff could reasonably rely. *Allan Construction*, 851 F.2d at 1532.

tion of stale claims. *See* 2 Phillip Areeda & Donald F. Turner, *Antitrust Law* ¶ 325a (1978). Both the self-concealing standard and the intermediate standard would gut those policies.

The court in *Allan Construction* criticizes the separate and independent standard as unworkable. It claims that if the defendants were to shred documents on the day before the last bid was submitted, a court would have to ignore that fact. I respectfully disagree. Under the separate and apart doctrine, such an act would be part of the inquiry. As the current case illustrates, where there are no allegations of document shredding, a conspiracy can be kept secret without such shredding. Rather, shredding documents would be an act separate and apart from the acts in furtherance of the conspiracy. In any event, the separate and apart theory is no less workable in practice than the intermediate standard *Allan Construction* urges. As two distinguished commentators note, *Allan Construction* is not clear on what types of efforts satisfy its test nor on how one can distinguish between acts that are part of the conspiracy itself and acts that can be counted as concealing it. Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 325'd (Supp.1993).

■ Having decided that the separate and apart theory controls, I return to the hearsay objection. It is apparent to me that the only motive either the prosecution or the defense had at the criminal trial of the individuals was to develop French's testimony regarding the conspiracy itself. There was no effort to develop testimony about fraudulent concealment. Indeed, any such effort on cross-examination could have undercut the criminal defendants' position that no price-fixing discussions took place. There was certainly no motive to inquire into the subtle distinction between those acts taken in furtherance of the conspiracy and those acts that were taken separate and apart from the conspiracy to cover it up.

7. As the plaintiff points out, *Screws* did go on to admit the testimony under the residual exception. My citation of *Screws* here does not imply support for the court's conclusion with respect to the residual exception. As will be discussed

■ Additionally, to the extent the predecessor in interest inquiry is still relevant following the *Horne* decision, the individual defendants in the criminal case are not predecessors in interest to the corporate defendants in the instant action. As one court has noted: "It would be against the rule's [F.R.E. 804(b)(1) ] plain language and meaning as identified by the House of Representatives to find in a situation such as this that earlier criminal defendants were the 'predecessors in interest' of later civil defendants." *In re Screws Antitrust Litigation,* 526 F.Supp. 1316, 1319 (D.Mass.1981).[7] *Screws* involved a factually similar case wherein the plaintiff sought to use the testimony of an officer of the civil defendant's subsidiary. *Id.* at 1319. The criminal defendants included an individual and a corporation, both unrelated to the civil defendant. *Id.* For these two reasons, the requirements for admission under Rule 804(b)(1) are not satisfied and I will not admit the testimony under that exception.

## B.

I turn next to the statement against interest exception in Rule 804(b)(3). A statement against interest is one that

> was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

F.R.E. 804(b)(3).

■ In this case, French's criminal trial testimony was under a grant of use immunity. Use immunity guarantees that the government may not use the immunized testimony as a source of evidence. *United States v. Jarvis,* 7 F.3d 404, 414 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1200, 127 L.Ed.2d 549 (1994). Evidence derived from other sources is permissibly used. *Id.* To

more extensively below, under controlling Fourth Circuit precedent, I hold that there are not sufficient "circumstantial guarantees of trustworthiness" surrounding French's testimony.

the extent that French was the government's star witness at the criminal trial, there should be little question that French's testimony at trial was not against his penal interest. Generally, immunized testimony is not a statement against interest. *See United States v. Williams*, 809 F.2d 1072, 1083 (5th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 228, 229, 98 L.Ed.2d 187 *and cert. denied*, 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 *and cert. denied*, 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 504 (1987).[8]

 The question arises, therefore, whether French's testimony was against his pecuniary or proprietary interest in that it could have led to civil liability under the federal antitrust laws. Such liability did·exist in theory. The objects of French's alleged price-fixing and bid-rigging conspiracy could have sued him; but as the parties the plaintiff brought suit against in this case indicate, the likelihood of a suit against an individual is remote.

 In order to qualify as a statement against interest, the declarant must be aware at the time of making the statement that it is against his interest. *Roberts v. City of Troy*, 773 F.2d 720, 725 (6th Cir.1985). The circumstances here satisfy me that this requirement is not met. A reasonable person in French's position would have testified to avoid criminal prosecution because that testimony would *not* be "*so far* contrary to [French's] pecuniary or proprietary interest...." F.R.E. 804(b)(3) (emphasis added). The reason is simple. French's testimony was *for* his interest, not against. By testifying, he avoided criminal prosecution, the chief concern of the moment. It is highly

unlikely that he was aware, or if aware, that he cared, that a theoretical possibility of a civil lawsuit existed.[9]

This case is analogous to the circumstances in *Pink Supply Corp. v. Hiebert, Inc.*, 612 F.Supp. 1334 (D.Minn.1985), *aff'd*, 788 F.2d 1313 (8th Cir.1986). *Pink Supply* involved a statement from an employee of a nonparty that allegedly exposed the employer and the declarant to civil liability.[10] The court noted that "making a statement which a plaintiff might later use to assert a claim of vertical price-fixing is in sharp contrast to admitting something obviously inculpatory like running a red light and causing an accident." *Id.* at 1345. Thus, there was little to suggest that the statement was against the declarant's interest. Accordingly, I will not admit the testimony under the statement against interest exception.

## C.

 Finally, I come to the residual exception contained in Rule 804(b)(5). This rule provides, in pertinent part, that

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

**8.** *See* Plaintiffs Memorandum in Opposition to Defendants' Motion for Summary Judgment at 12 n. 5 (noting that state authorities could not use French's testimony in a criminal prosecution either).

**9.** *Cf. Gichner v. Antonio Troiano Tile & Marble Co.*, 410 F.2d 238, 241–43 (D.C.Cir.1969) (holding that statement of person that he was smoking in building prior to destruction of that building by fire was statement against interest). Plaintiff relies upon this case in its opposition brief. But this case is distinguishable on two grounds. First, the plaintiff there sought to make the declarant a party to the lawsuit. This indicates that the prospect of civil liability was far more signifi-

cant than here. Second, the declarant's statement exposed him to liability on negligence grounds. As I am about to discuss, this is far different than liability for a complex price-fixing scheme.

**10.** *See Pink Supply*, 612 F.Supp. at 1344–45. The case involved a vertical price-fixing conspiracy. The contents of the statement are disputed, but could have shown that the nonparty exerted pressure on one of the defendants to terminate their distributor agreement with the plaintiff because the plaintiff was discounting its prices too deeply and the nonparty, another distributor for defendant, wanted plaintiff cut off. *Id.*

F.R.E. 804(b)(5). A recent Fourth Circuit case makes clear that this exception is available when a statement does not satisfy all of the requirements for admissibility under any of the other exceptions to the hearsay rule. *United States v. Clarke,* 2 F.3d 81, 83 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 544 (1994). The main inquiry on which the court and litigants should focus is the question of "equivalent circumstantial guarantees of trustworthiness" and not on how closely the statement misses being admitted under another exception. *Id.* at 84.

■■■ The court in *Clarke* admitted testimony from a suppression hearing. In that hearing, the brother of the defendant implicated the defendant in a cocaine conspiracy. *Id.* at 83. The brother refused to testify at trial and was declared unavailable. Because the district court found the former testimony exception inapplicable, the court admitted the testimony under the residual exception. The court of appeals affirmed. The guarantees of trustworthiness the court found important included: (1) the brother was questioned by his own counsel and cross-examined; (2) a contemporaneous transcript of the hearing was made; (3) the brother knew his statements could not be used against him at his trial;[11] (4) the brother did not need to implicate the defendant in order to challenge the search that yielded the crack cocaine. *Id.* at 84–85. The testimony, concluded the Fourth Circuit, had the "ring of reliability" about it. *Id.* at 85.

Some of these factors exist in this case. French was subject to vigorous cross-examination and testified under oath. A transcript exists. The grant of immunity is analogous to the brother's situation in a suppression hearing. But, more compelling reasons exist that suggest a motive to falsify existed on the part of French.

Unlike the brother in *Clarke,* French *did* have reason to implicate the individual defendants at the criminal trial. He cooperated with federal authorities in order to avoid prosecution. Self-preservation is a strong motivating force. Neither is there a familial relationship between the declarant and the persons implicated. Indeed, the opposite exists. Meadow Gold had fired French from his position. The accompanying animosity creates reasons to fabricate; it does not lessen them. French has been anything but consistent in his position. When Justice Department attorneys first contacted French regarding the criminal trial, he denied any violation. He then changed his story once he began cooperating with the government.[12] Finally, and most compellingly, the jury in the criminal case refused to convict the individual defendants. The individual defendants' primary defense was French's lack of credibility. Contrary to the testimony in *Clarke,* the testimony of French simply does not have a "ring of reliability about it." Accordingly, I will not admit the testimony under the residual exception.

## IV.

■■■ Once French's testimony is excluded, the evidence of fraudulent concealment all but evaporates. The only non-French evidence argued by the plaintiff in its brief is the actions and statements of James Woods, as reported by his subordinate Ernest Allen, and two documents stating that the bids were not collusive. All of this evidence is insufficient to establish acts of concealment separate and apart from the conspiracy.

Allen testified that Woods would tell him to shut the office door when French called Woods. He also told Allen that one-on-one meetings were the way to fix prices. I am not persuaded. A desire to carry on a conversation in private is not out of the ordinary. In any event, shutting the door to an office while discussing price-fixing is not part of an affirmative cover-up as the separate and apart standard requires. Telling Allen that one-on-one meetings are the way to fix prices is also insignificant. Initially, it is nothing more than an observation of an obvious fact. Furthermore, it indicates that there was *not* a cover up because, as plaintiff

---

11. The brother was also a defendant charged with possession with intent to distribute cocaine base.

12. *See* Plaintiff's Opposition Brief at 9–10.

notes, Allen was *not* involved in the conspiracy.

 Of the two documents plaintiff relies upon, one is a signed statement of noncollusion contained in a bid submitted to the Roanoke Public Schools. The other is a certificate of noncollusion executed pursuant to company policy. These documents do not suffice to meet the separate and apart standard. An allegedly false noncollusion certificate is simply a failure to disclose wrongdoing and not an affirmative act of concealment. *Colorado v. Western Paving Co.*, 630 F.Supp. 206, 209–10 (D.Colo.1986), *aff'd by equally divided en banc court*, 841 F.2d 1025 (10th Cir.1988), *cert. denied*, 488 U.S. 870, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988).[13]

### V.

The remaining claims in plaintiff's complaint arise under West Virginia and Virginia law. *See* Va.Code Ann. § 59.1–9.12(b) (Michie 1992); W.Va.Code § 47–18–9 (1994). The plaintiff pled pendent jurisdiction as a basis for jurisdiction over these state law claims. *See* Complaint ¶ 2. Under 28 U.S.C. § 1367(c)(3), a court may decline to exercise its supplemental jurisdiction over pendent state law claims if the district court dismisses all claims over which it has original jurisdiction. To the extent that I will grant summary judgment on the federal claims in this action, I exercise the discretion that section 1367 grants and dismiss the state law claims.

### VI.

The separate and apart rule applies to the first prong of the fraudulent concealment standard. Thus, the plaintiff must show that the defendants took affirmative steps to cover-up their wrongdoing. These steps must be distinct from the acts necessary to maintain a price-fixing conspiracy. As shown above, the plaintiff has failed to proffer evidence sufficient to satisfy this requirement. French's testimony is inadmissible hearsay.

The remaining evidence is simply insufficient to meet the separate and apart rule. Accordingly, I will grant summary judgment in favor of all defendants on the federal claims. The state claim will be dismissed without prejudice.

---

**13.** Even if I were to allow French's testimony in, it does not satisfy the separate and apart standard. As plaintiff admits in its brief, French never testified that " 'we acted as we did to conceal wrongdoing.' " *See* Plaintiff's Memorandum in Opposition to Defendants' Motions for Summary Judgment at 14. All French could testify to is the fact that secret meetings occurred. This merely demonstrates the fallibility of the intermediate standard because every price-fixing conspiracy will have similar secret meetings.